# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

NARESH RAJA d/b/a AMERICA'S BEST
VALUE INN,

       Plaintiff,

vs.                                                                              No. CIV 17-0834 JB\CG

OHIO SECURITY INSURANCE
COMPANY; LIBERTY MUTUAL
INSURANCE COMPANY and JEFFERY
ROBINSON,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants Ohio Security Insurance
Company and Liberty Mutual Insurance Company's Motion to Dismiss and for Declaratory
Judgment and Supporting Authority, filed August 22, 2017 (Doc. 6)("MTD"). The primary
issues are: (i) whether the Court should dismiss the Complaint (Third Judicial District Court,
County of Doña Ana, State of New Mexico, filed May 22, 2017), filed in federal court August
15, 2017 (Doc. 1-4), because Plaintiff Naresh Raja[1] d/b/a America's Best Value Inn ("Value
Inn") failed to meet its contractual conditions precedent for filing suit against Defendants Ohio
Security Insurance Company, Liberty Mutual Insurance Company, and Jeffery Robinson
("Liberty Mutual"); (ii) whether Value Inn states claims upon which the Court can grant relief
under rule 12(b)(6) of the Federal Rules of Civil Procedure for breach of contract, insurance bad
faith, violations of New Mexico's Unfair Insurance Practices Act, N.M. Stat. Ann. §§ 59A-16-1

---

[1]The Plaintiff's name is captioned as Naresh Raja, but the Court understands that his
surname name is Naresh, because he refers to himself as "Mr. Naresh" in his pleadings. <u>E.g.</u>,
Complaint ¶ 10, at 3; Plaintiff's Response to Defendants' Motion to Dismiss and Plaintiff's Plea
in Abatement ¶ 5, at 2, filed August 28, 2017 (Doc. 9)("Response").

to -30 ("UIPA"), violations of New Mexico's Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26 ("UPA"), and negligent misrepresentation; (iii) whether the Court should abate the action to allow the parties to complete appraisal on Value Inn's property damage claim; and (iv) whether to award attorneys' fees. The Court concludes that: (i) it will not dismiss the Complaint for Value Inn's failure to meet conditions precedent to filing suit, because there is a substantial likelihood that Value Inn will be time barred from filing a complaint alleging these claims again in the future; (ii) Value Inn states a claim for breach of contract, insurance bad faith, and some UIPA violations; (iii) Value Inn does not state a claim for UPA violations, negligent misrepresentation, or some UIPA violations, because Value Inn does not allege facts supporting those claims; (iii) the Court will not abate the action; and (iv) the Court will not award attorneys' fees because Value Inn's unsuccessful UIPA claims were not groundless and its UPA claims were not groundless. Accordingly, the Court grants in part and denies in part the MTD.

## FACTUAL BACKGROUND

Value Inn purchased insurance from Liberty Mutual that covered wind and hail damage to its commercial property in Las Cruces, New Mexico. See Complaint ¶ 6, at 2. The Building and Personal Property Coverage Form and Commercial Property Conditions, filed August 22, 2017 (Doc. 6-1)("Contract") has an appraisal provision that states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Contract ¶ E(2), at 8 ("Appraisal Clause"). The Contract also lists several "Duties In The Event

Of Loss Or Damage":

> a.      You must see that the following are done in the event of loss or damage to Covered Property:

> . . . .

>> (5) At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.

>> (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. . . .

>> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

>> (8) Cooperate with us in the investigation or settlement of the claim.

> b.      We may examine any insured under oath, while no in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

Contract ¶¶ 3(a)-(b), at 8.  The Contract also states:

> No one may bring a legal action against us under this Coverage Part unless:

>> 1.  There has been full compliance with all the terms of this Coverage Part; and

>> 2.  The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Contract ¶ D, at 10.

On or about October 23, 2015, the Value Inn's property sustained wind and hail damage.

See Complaint ¶ 7, at 2-3.  Value Inn filed a claim with Liberty Mutual, but Value Inn believed

that the damage exceeded the $130,301.56 estimate that Liberty Mutual's adjuster, Jeffery

Robinson, provided.  See Complaint ¶ 8-9, at 3.  Value Inn requested a settlement conference

with Liberty Mutual, and Liberty Mutual requested an Examination Under Oath ("EUO") of Value Inn. Complaint ¶ 10, at 3.

**PROCEDURAL BACKGROUND**

On May 22, 2017, Value Inn filed the Complaint in state court alleging that Liberty Mutual breached its contract, <u>see</u> Complaint ¶¶ 15-18, at 6-7; acted in bad faith, <u>see</u> Complaint ¶¶ 19-20, at 7-8; violated New Mexico's UIPA; violated New Mexico's UPA, <u>see</u> Complaint ¶¶ 25-27, at 9-10; and made negligent misrepresentations, <u>see</u> Complaint ¶¶ 28-29, at 10-11. Value Inn also sought a court order declaring that an EUO "is not appropriate in this matter and that this claim proceed through the appraisal process in the policy." Complaint ¶ 38(a), at 12. Liberty Mutual removed the case to federal court, asserting that the Court has diversity jurisdiction. <u>See</u> Notice of Removal ¶ 2, at 1-2.

**1.    The Motion to Dismiss.**

In their MTD, Liberty Mutual asserts that, under their Contract, Value Inn may not bring a legal action against Liberty Mutual or request an appraisal unless Value Inn has fully complied with the Contract's terms. <u>See</u> MTD at 7-8. According to Liberty Mutual, Value Inn has not complied with the Contract's terms, because it has refused to give an EUO or provide certain requested documents. <u>See</u> MTD at 7-8. Liberty Mutual concludes that, because Value Inn has not met the "conditions precedent" to bringing a legal action or demanding an appraisal, Value Inn has failed to state a claim upon which relief may be granted. <u>See</u> MTD at 13.

Next, Liberty Mutual argues that Value Inn's claims for breach of contract and bad faith do not state a plausible claim, because Value Inn makes conclusory allegations that recite UIPA provisions "without regard to applicability or any factual basis." MTD at 13. Liberty Mutual also contends that Value Inn's recitations of UIPA provisions are irrelevant to the breach-of-contract and insurance bad-faith claims, because those claims arise out of contract.

<u>See</u> MTD at 13-14.  Liberty Mutual contends, moreover, that Value Inn's breach-of-contract and bad-faith claims are premature, "because Plaintiff refuses to allow Liberty Mutual to conduct its investigation."  MTD at 14.

As for Value Inn's UIPA violation claim, Liberty Mutual argues Value Inn has not stated a claim upon which relief can be granted, because Value Inn does not allege any facts to support its conclusory allegations.  <u>See</u> MTD at 16-17.

Liberty Mutual next addresses Value Inn's UPA claim.  <u>See</u> MTD at 17-21.  Liberty Mutual argues that UPA claims require proving deceptive practices in the sale of a product, <u>see</u> MTD at 18-19, but Value Inn does not allege unfair practices relating to the insurance policy's sale, <u>see</u> MTD at 20.  Liberty Mutual requests that the Court award Liberty Mutual attorneys' fees and costs for defending Value Inn's allegedly baseless UPA claims.  <u>See</u> MTD at 21.

Next, Liberty Mutual argues that Value Inn does not "set forth the elements" of its negligent misrepresentation claim.  MTD at 21.  Liberty Mutual contends that Value Inn appears to be alleging a simple negligence claim, but, nonetheless, does not allege simple negligence's elements.  <u>See</u> MTD at 21.  Moreover, Liberty Mutual contends that the Court previously made an <u>Erie</u> prediction under <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938) that "'New Mexico does not recognize a cause of action for negligence or professional negligence against an insurance company.'"  MTD at 21-22 (quoting <u>Grasshopper Natural Medicine, LLC v. Hartford Cas. Ins. Co.</u>, 2016 WL 4009834, *29 (D.N.M. July 7, 2016)(Browning, J)).  Liberty Mutual concludes that, because New Mexico does not recognize negligence claims against an insurer, Value Inn's negligence or negligent misrepresentation claim does not state a claim upon which relief can be granted.  <u>See</u> MTD at 22.

Liberty Mutual concludes by asking the Court to declare that Value Inn's legal action and

request for appraisal are premature, dismiss Value Inn's Complaint in its entirety for failure to state a claim upon which relief can be granted, and award Liberty Mutual its fees for defending Value Inn's baseless UPA and UIPA claims.  See MTD at 22-23.

        **2.**        **The Response.**

In the Plaintiff's Response to Defendants' Motion to Dismiss and Plaintiff's Plea in Abatement, filed August 28, 2017 (Doc. 9)("Response"), Value Inn contends that it has agreed to submit to an EUO and that the EUO is set for September 1, 2017.  See Response ¶ 5, at 2.  Value Inn continues that Liberty Mutual's EUO request letter is "extremely broad and unduly burdensome and appears to be for the purpose of attempting to dissuade him from continuing with his claim," but, nonetheless, Value Inn asserts that it has agreed to "produce certain documents and proceed with the EUO, cooperating in document production to the full extent reasonably possible."  Response ¶ 5, at 2-3.  Value Inn also contends that its appraisal demand is valid under the policy provisions, but that Liberty Mutual has "refused to engage in appraisal pending the EUO."  Response ¶ 5, at 3.

Value Inn notes that the policy has a limitations provision barring legal action against Liberty Mutual after two years from the loss or damage date.  See Response ¶ 8, at 4. Consequently, Value Inn contends, it had "no choice" but to file suit when it did.  Response ¶ 8, at 4.  Value Inn asserts that many courts have refused to uphold limitations provisions that are tied to the date of occurrence and not to the date on which the cause of action accrues.  See Response ¶ 9, at 4.  Value Inn concludes that the "limitations clause in the subject policy should be held void as against public policy."  Response ¶ 10, at 5 (citing Spicewood Summit Office Condominiums Ass'n, Inc. v. American First Lloyd's Ins. Co., 287 S.W.3d 461, 465 (Tex. App. 2009)).

Value Inn concludes that the "proper remedy" at this point is for the Court to "abate the

case pending the additional investigation requested by Defendant and the appraisal." Response ¶ 11, at 5 (citing <u>Vanguard v. Smith</u>, 999 S.W.2d 448 (Tex. App. 1999)). Value Inn contends that allowing the EUO and appraisal processes to proceed will likely resolve many of the points of dispute in this case. <u>See</u> Response ¶ 12, at 5. Value Inn asserts that dismissing the case would "deprive Plaintiff to his right to Due Process and expose Plaintiff to a potential limitations argument" for its claims. Response ¶ 13, at 5. Value Inn next argues that awarding Liberty Mutual its attorneys' fees is not appropriate. <u>See</u> Response ¶ 15, at 5-6. Value Inn argues that, given the "wide disparity" between their damage estimates, there is a good-faith basis that Liberty Mutual violated the UIPA and the UPA. Response ¶ 15 at 6. Value Inn asserts that discovery "into the training and methods of the adjusters assigned to the claim and all information in their possession will be needed in order to garner evidence of these allegations." Response ¶ 15 at 6. Value Inn also asks that, if the Court dismisses the suit, it do so without prejudice. <u>See</u> Response ¶ 16(c), at 6.

3.    **The Reply.**

Liberty Mutual replies. <u>See</u> Ohio Security Insurance Company and Liberty Mutual Insurance Company's Reply in Support of Motion to Dismiss and for Declaratory Judgment (Doc. 6) and Response to Plaintiff's Plea for Abatement (Doc. 9), filed September 11, 2017 (Doc. 12)("The Reply"). Liberty Mutual argues that Value Inn, in the Response, effectively concedes that its Complaint is premature, because Value Inn does not address Liberty Mutual's prematurity arguments. <u>See</u> Reply at 3. Liberty Mutual further contends that Value Inn's request for the Court to order Liberty Mutual to conduct an appraisal is moot, because, after Value Inn filed its Response, it submitted to an EUO and provided requested documents, and Liberty Mutual agreed to an appraisal. <u>See</u> Reply at 4. "Furthermore, in the absence of any appraisal award and any additional investigation relevant to appraisal, Plaintiff's claims remain

premature and fail to state a claim." Reply at 4.

Next, Liberty Mutual revisits its argument that the Court should dismiss Value Inn's breach claims for breach of contract, insurance bad faith, and UPA and UIPA violations for failing to state a claim. See Reply at 5. Liberty Mutual adds that Value Inn's contract claims are premature not only because it has not met the conditions precedent for taking this legal action, but because its claims remain premature "as appraisal is now agreed to [but] has not been completed." Reply at 5. Liberty Mutual asserts that Value Inn provides no authority for its argument that Liberty Mutual's refusal to engage in appraisal pending the EUO "is a violation of policy conditions and Liberty Mutual's duties after loss." Reply at 6 (citing Response ¶ 5, at 2-3; D.N.M.LR-Civ. 7.3(a)).

Liberty Mutual asserts that Value Inn's UIPA claim remains premature, because Value Inn "only recently gave his EUO and provided documentation," and Liberty Mutual has not yet completed an appraisal. Reply at 7. Liberty Mutual also contends that Value Inn's argument that the disparity in their loss estimates establishes a good-faith basis to assert UIPA and UPA violations lacks support in the law. See Reply at 7. According to Liberty Mutual, an insurer is entitled to dispute an issue "if it is fairly debatable or if it believes the claim is overvalued." Reply at 7 (citing United Nuclear Corp. v. Allendale Mut. Ins. Co., 1985-NMSC-090, ¶ 17, 709 P.2d 649, 654).

Liberty Mutual also asserts that Value Inn does not address the majority of its arguments against its UIPA and UPA violation claims, or the arguments against its negligent misrepresentation claim, and, therefore, concedes the arguments. See Reply at 7- 9.

Next, Liberty Mutual requests that the Court deny Value Inn's plea for abatement and dismiss the case as premature and/or moot. See Reply at 10. Liberty Mutual argues that "filing a

lawsuit ahead of a limitations period to preserve a claim that has not accrued" is not sufficient reason for the Court to determine that Value Inn has met the pleading standard in <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544 (2007)("<u>Twombly</u>").  Reply at 10.  Liberty Mutual asserts:

> Allowing a party to file a suit in anticipation of a breach of contract that may not even occur is a dangerous precedent that would promote the filing of any premature lawsuit, regardless of whether or not a cause of action has accrued. Filing premature lawsuits would weigh against the interests of judicial economy and is unfair and, therefore, prejudicial to a defendant.

Reply at 10.  Moreover, Liberty Mutual argues, "preserving a timely limitations defense is not a legal reason to decline to dismiss this case for failure to state a claim."  Reply at 11.

## LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  <u>Henry v. Office of Thrift Supervision</u>, 43 F.3d 507, 511 (10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  <u>See</u> <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  <u>Ruiz v. McDonnell</u>, 299 F .3d 1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  <u>See</u> <u>Ruiz v. McDonnell</u>, 299 F.3d at 1180; <u>Williamson v. Tucker</u>, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the

jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Hill v. Vanderbilt Capital Advisors, LLC, No. CIV 10-0133, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011)(Browning, J.)(quoting Alto Eldorado Partners v. City of Santa Fe, 2009 WL 1312856, at *8-9). The United States Court of Appeals for the Fifth Circuit has stated:

[T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either rule 12(b)(6) of the Federal Rules of Civil Procedure or rule 56 of the Federal Rules of Civil Procedure. See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999);

Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(Brorby, J.). The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)(Briscoe, J.)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)(McKay, J.)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at

555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(Kelly, J.)(emphasis omitted). The United States Court of Appeals for the Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(McConnell, J.)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions. First, a defendant

can argue an affirmative defense on a motion to dismiss where the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss. See Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009)); Robbins v. Oklahoma, 519 F.3d at 1247. Second, the defendant can raise the defense on a motion to dismiss where the facts establishing the affirmative defense are apparent on the face of the complaint. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(Hill, J.)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense that the complaint's uncontroverted facts is most likely to establish. See 5 Charles Alan Wright et al., Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2004). If the complaint sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6). See Rohner v. Union P. R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955)(Wallace, J.); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945)(Phillips, J.); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.).

The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute. The Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion. Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(Major, J.)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, the plaintiff must plead facts establishing an exception to the affirmative defense). It appears that, from case law

in several Courts of Appeals, the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by refraining from pleading specific or identifiable dates. See Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007)(Niemeyer, J.); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)(Ripple, J.). Although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice. See Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING DIVERSITY JURISDICTION AND ERIE

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Trust Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Int'l., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[2] If the Court finds only an opinion from the Court of Appeals of New

---

[2]In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d at 1247 n.30. Courts should, obviously, be reticent to formulate an Erie prediction that conflicts with state-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between

Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that, where the only opinion on point is "from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it")(citing Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")).[3] The Court may also rely on Tenth Circuit

---

cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times. See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17. In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

[3]The Supreme Court of the United States of America has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more

decisions interpreting New Mexico law. See <u>Anderson Living Trust v. WPX Energy Prod.,</u> <u>LLC</u>, 27 F. Supp. 3d at 1243 & n.30.[4] Ultimately, "the Court's task is to predict what the state

> convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.
>
> . . . We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.
>
> . . . .
>
> The question has practical aspects of great importance in the proper administration of justice in the federal courts. It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship. In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

<u>Fid. Union Trust Co. v. Field</u>, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted). The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point." <u>Comm'r v. Estate of Bosch</u>, 387 U.S. at 465 (citing <u>King v. Order of United Commercial Travelers</u>, 333 U.S. 153, 159 (1948)). <u>See</u> 17A James Wm. Moore et al., <u>Moore's Federal Practice</u> § 124.20 (3d ed. 1999)("<u>Moore's</u>")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions.")(emphasis and title case omitted).

[4]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and state court interpretations of state law with the need for uniformity among federal judges. If the Court

adheres too rigidly to Tenth Circuit case law, ignoring changes undergone by a state's law in the ensuing years, then parties litigating state-law claims will be subject to a different body of substantive law, depending on whether they litigate in state court or federal court.  This result frustrates the purpose of <u>Erie</u>, which held that federal courts must apply state court interpretations of state law, rather than their own, in part so that parties achieve a consistent result regardless of the forum.  This consideration pulls the Court toward according Tenth Circuit precedent less weight, and according state court decisions issued in the ensuing years more weight.  On the other hand, when the state law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation.  Otherwise, different federal judges within the same circuit -- or even the same district, as district courts' decisions are not binding, even upon themselves -- would be free to adopt differing interpretations of a state's law.  This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point -- regardless whether it accurately reflects state law -- at least provides consistency at the federal level, so long as federal district judges are required to follow it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the state's highest court, on one end; and independently interpreting the state law, regarding the Tenth Circuit precedent as no more than persuasive authority, on the other.  In striking this balance, the Court notes that it is generally more concerned about systemic inconsistency between the federal courts and the state courts than it is about inconsistency among federal judges.  Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system.  More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal.  All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would.  Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency.  When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law.  Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' decisions are.  More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do.  As such, Tenth Circuit precedent can lag behind state law developments -- developments that the district courts may be nimble enough to perceive and adopt.  Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted.  Other than Oklahoma, every state

encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state(s) than it is for the Tenth Circuit to monitor separate legal developments in eight states. The Tenth Circuit used to follow this rationale in applying a clearly erroneous standard of review to district judge decisions of state law with no controlling state Supreme Court precedent. See Weiss v. United States, 787 F.2d 518, 525 (10th Cir. 1986); See Rawson v. Sears, Roebuck, & Co., 822 F.2d 908, 923 (10th Cir. 1987)(McKay, J., dissenting)(collecting cases). Since the mid-1980s, however, the Tenth Circuit has abandoned that rationale and applied a de novo standard of review to district judge decisions applying state law with no governing state Supreme Court precedent. See Rawson v. Sears, Roebuck, & Co., 822 F.2d at 908. See also id. at 923 (McKay, J., dissenting)(noting that the majority had abandoned the "sanctified" clearly-erroneous standard or, the "so-called local-judge rule" in its analysis). The Court regrets the Tenth Circuit's retreat from the clearly erroneous standard.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the state law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based only on state court cases available to and considered by the Tenth Circuit, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that x is the law in New Mexico; it holds that the proper interpretation of New Mexico law, at the time the opinion is released, is x. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with Erie, giving independent substantive effect to federal judicial decisions -- i.e., applying federal law -- in a case brought in diversity.

The purpose of Erie is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless

whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." Moore's § 124.22[3] (citing Comm'r v. Estate of Bosch, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")(citation and internal quotation marks omitted). This may not be the most precise formulation if the goal is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, see Abbott Laboratories v. Granite State Ins. Co., 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. See Allstate Ins. Co. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider state appellate and trial court decisions. To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would never inform a federal court's analysis of federal law -- may validly come into play. The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the Erie analysis to their parent appellate courts when the Court of Appeals has declared an interpretation of state law.

The Erie doctrine results in federal cases that interpret state law withering with time. While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale. New state court cases -- even when not directly rebuking the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone. The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on Erie, of course, mean little if the Tenth Circuit does not agree. In Wankier v. Crown Equipment Corp., the Tenth Circuit said that,

> [w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do. In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*. Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on

Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.). From this passage, it seems clear the Tenth Circuit permits a district court to deviate from its view of state law only on the basis of a subsequent case "of the state's highest court." The American Heritage Dictionary of the English Language 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that"). A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation in order to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional. Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts. Even Koch v. Koch Industries, Inc., 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which Wankier v. Crown Equipment Corp. relies, uses the more inclusive definition. In fact, Wankier v. Crown Equipment Corp. quotes its relevant passage:

> In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of Allen [v. Minnstar, Inc., 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." Koch v. Koch Indus., Inc., 203 F.3d at 1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.

Whether the decision to limit the intervening authority a district court can consider was intentional or not, the Tenth Circuit has picked it up and run with it. In Kokins v. Teleflex, Inc., the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refused to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1297 (10th Cir. 2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided Biosera[, Inc. v. Forma Scientific, Inc., 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's highest court.'")(emphasis in original)(quoting Wankier v. Crown Equip. Corp., 353 F.3d at 866).

The Tenth Circuit has set forth a stringent restriction on its district courts' ability to independently administer the Erie doctrine. More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as its own prior case law. Moore's lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive." Moore's § 124.22[4] (citing

supreme court would do." Wade v. EMCASCO Ins. Co., 483 F.3d at 666. Accord Mosley v. Titus, 762 F. Supp. 2d at 1332 (citation omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d 1174, 1188-89 (D.N.M. 2008)(Browning, J.)(quoting Wade v. EMCASCO Ins. Co., 483 F.3d at 665-66).

## LAW REGARDING MOOTNESS

"Article III, Section 2 of the United States Constitution limits the federal courts' jurisdiction to actual cases and controversies." Salazar v. City of Albuquerque, 776 F.Supp.2d 1217, 1227 (D.N.M.2011)(Browning, J.). "Federal courts are without authority to decide questions that cannot affect the rights of litigants in the case before them." Ford v. Sully, 773 F.Supp. 1457, 1464 (D.Kan.1991)(citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)). See Johansen v. City of Bartlesville, 862 F.2d 1423, 1426 (10th Cir.1988); Johnson v. Riveland, 855 F.2d 1477, 1480 (10th Cir.1988)). "To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997). See Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1121 (10th Cir.2010). Accordingly, if a case is moot, or becomes moot during any stage of the case, the court does not have jurisdiction to hear the case. A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Cty. of L.A. v. Davis, 440 U.S. 625, 631 (1979)(citing Powell v. McCormack, 395 U.S. 486, 496 (1969)).

A court should not be quick to dismiss a claim for lack of jurisdiction. "Before deciding that there is no jurisdiction, the district court must look at the way the complaint is drawn to see

---

State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co., 433 F.2d 311, 312 (10th Cir. 1970)). Still, the Court is bound to abide by the Tenth Circuit's interpretation of Erie.

if it is drawn so as to claim a right to recover under the Constitution and the laws of the United States." Bell v. Hood, 327 U.S. 678, 682 (1946). Jurisdiction is not dependent on whether the plaintiff will succeed in his cause of action; jurisdiction is determined before the details of the cause of action, both in law and fact, are considered. See Bell v. Hood, 327 U.S. at 682.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[5]

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts

---

[5]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law. See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.").  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256.  <u>See</u> <u>Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1231 (10th Cir. 1990); <u>Otteson v. United States</u>, 622 F.2d 516, 519 (10th Cir. 1980)("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.")(citation omitted). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  <u>Colony Nat'l Ins. Co. v. Omer</u>, 2008 U.S. Dist. LEXIS 45838, at *1 (D. Kan. 2008)(Robinson, J.)(citing <u>Argo v. Blue Cross & Blue Shield of Kan., Inc.</u>, 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 248).  Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 251 (quoting <u>Schuylkill & Dauphin Improvement Co. v. Munson</u>, 81 U.S. 442, 448

(1871)); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249 (citations omitted).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 550-55 (1999); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Fourth, the court cannot decide credibility issues. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. This doctrine developed most robustly in the qualified immunity arena. In <u>Scott v. Harris</u>, 550 U.S. 372 (2007), the Supreme Court of the United States of America concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81. The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable
> to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed.

Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. [at] 586-587 . . . (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott v. Harris</u>, 550 U.S. at 380 (emphases in original). Applying these standards to a factual dispute over whether the plaintiff-respondent "was driving in such fashion as to endanger human life," the Supreme Court held that the plaintiff-respondent's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." 550 U.S. at 380. Thus, the Supreme Court concluded, "[t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by [a] videotape," which showed the plaintiff-respondent driving extremely dangerously. 550 U.S. at 381.

The United States Court of Appeals for the Tenth Circuit applied this doctrine in <u>Thomson v. Salt Lake County</u>, 584 F.3d 1304 (10th Cir. 2009), and explained:

[B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts." <u>York v. City of Las Cruces</u>, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting <u>Scott</u>, 550 U.S. at 380); <u>see also</u> <u>Estate of Larsen ex rel. Sturdivan v. Murr</u>, 511 F.3d 1255, 1258 (10th Cir. 2008).

<u>Thomson v. Salt Lake Cty.</u>, 584 F.3d at 1312 (brackets omitted). "The Tenth Circuit, in <u>Rhoads</u>

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[6]] explained that the

blatant contradictions of the record must be supported by more than other witnesses'

testimony[.]" Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning,

J.)(citation omitted), aff'd, 499 F. App'x 771 (2012).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007). "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380. In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events. 550 U.S. at 379. Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . . Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92. See Lymon v. Aramark Corp., 728 F. Supp. 2d at

1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92). In a concurring opinion in

Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for

---

[6]Rhoads v. Miller is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Jaramillo v. Gov't Employees Ins. Co., 573 F. App'x 733 (10th Cir. 2014)(Holmes, J.) (unpublished); Keys v. State Farm Mut. Auto. Ins. Co., No. 2:12-CV-1181, 2013 WL 3198397, at *4 (D. Nev. June 21, 2013)(Mahan, J.)(unpublished); Rhoads v. Miller, 352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished); and Armstead v. Allstate Prop. & Cas. Ins. Co., No. 1:14-CV-586, 2015 WL 2408049, at *3 (N.D. Ga. May 20, 2015)(Duffey Jr., J.) (unpublished) have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

See American Mechanical Solutions, L.L.C. v. Northland Process Piping, Inc., 184 F. Supp. 3d 1030, 1078 (D.N.M. 2016)(Browning, J.)(granting summary judgment on a breach-of-the-implied-warranty-of-merchantability claim); Payne v. Tri-State Careflight, LLC, No. CIV 14-1044, 2016 WL 6396214, at *18 (D.N.M. 2016)(Browning, J.)(denying summary judgment because federal law did not preempt the Plaintiffs' claims in the field of wage and labor regulation for airline and railroad workers).

## LAW REGARDING THE UIPA

The New Mexico Legislature passed the UIPA, N.M. Stat. Ann. § 59A-16-20, "to regulate trade practices in the insurance business and related businesses," including "practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices." N.M. Stat. Ann. § 59A-16-2. N.M. Stat. Ann. § 59A-16-4 proscribes certain misrepresentations that relate to insurance transactions, including "misrepresent[ing] the benefits, advantages, conditions or terms of any policy." N.M. Stat. Ann. § 59A-16-4. N.M. Stat. Ann. § 59A-16-5 forbids "untrue, deceptive or misleading" advertisements that relate to insurance. N.M. Stat. Ann. § 59A-16-5. N.M. Stat. Ann. § 59A-16-8 makes actionable certain

falsifications of insurance records and the circulation of "any false statement of the financial condition of an insurer." Various provisions in the UIPA proscribe discrimination in relation to insurance transactions. See, e.g., N.M. Stat. Ann. §§ 59A-16-11 to -13.2. N.M. Stat. Ann. § 59A-16-19 prohibits anti-competitive insurance practices "resulting or tending to result in unreasonable restraint of, or monopoly in, the business of insurance." N.M. Stat. Ann. § 59A-16-19.

The UIPA imposes liability for a laundry list of unfair insurance claims practices, including the following:

A.    misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue;

B.    failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies;

C.    failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies;

D.    failing to affirm or deny coverage of claims of insureds within a reasonable time after proof of loss requirements under the policy have been completed and submitted by the insured;

E.    not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear;

F.    failing to settle all catastrophic claims within a ninety-day period after the assignment of a catastrophic claim number when a catastrophic loss has been declared;

G.    compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered;

H.    attempting to settle a claim by an insured for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

I.      attempting to settle claims on the basis of an application that was altered without notice to, or knowledge or consent of, the insured, his representative, agent or broker;

J.      failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made;

K.      making known to insureds or claimants a practice of insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

L.      delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

M.      failing to settle an insured's claims promptly where liability has become apparent under one portion of the policy coverage in order to influence settlement under other portions of the policy coverage;

N.      failing to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

O.      violating a provision of the Domestic Abuse Insurance Protection Act.

N.M. Stat. Ann. § 59A-16-20.  N.M. Stat. Ann. § 59A-16-30 provides a cause of action for UIPA

violations and allows attorney's fees for prevailing parties.  See N.M. Stat. Ann. § 59A-16-30.

The Honorable Bruce D. Black, United States District Judge for the District of New Mexico,

concluded that a plaintiff failed to plausibly plead a UIPA claim:

> Dr. Yumukoglu alleges generally that Provident's conduct "violates one or more of the provisions of Section 59A-16-20 NMSA 1978 (1984)," the section of the New Mexico Unfair Insurance Practices Act that prohibits unfair claims practices. Dr. Yumukoglu does not specify which of the fifteen provisions of this section he feels Provident has violated, and after a review of the statute, the Court cannot perceive which subsection could have been violated under the fact alleged. At the very least, Dr. Yumukoglu has failed to comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires that a civil complaint set forth "a short and plain statement of the claim showing that the

> pleader is entitled to relief." Here, it is not clear either what Dr. Yumukoglu is claiming or to what relief he is entitled under § 56A-16-20. Dr. Yumukoglu's claim appears, like his claim for breach of the duty of good faith and fair dealing, to be based on Provident's alleged bad faith in terminating his disability benefits. As discussed above, the Court finds that Provident's decision to terminate Dr. Yumukoglu's benefits did not amount to bad faith. Provident's motion for summary judgment on Plaintiff's claim for statutory violation is granted.

Yumukoglu v. Provident Life & Accident Ins. Co., 131 F. Supp. 2d 1215, 1227 (D.N.M. 2001)(Black, J.)(footnote omitted)(citations omitted). The Court has previously found that a plaintiff failed to state a claim under rule 12(b)(6) when the complaint did not contain even "a formulaic recitation of the elements of a cause of action" under the UIPA. Estate of Gonzales v. AAA Life Ins. Co., No. CIV 11-0486, 2012 WL 1132332, at *7 (D.N.M. March 28, 2012)(Browning, J.)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## LAW REGARDING THE UPA

The UPA makes unlawful any "[u]nfair or deceptive trade practices [or] unconscionable trade practices in the conduct of any trade or commerce." N.M. Stat. Ann. § 57-12-3. The UPA defines the term "unfair or deceptive trade practice" as

> an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person.

N.M. Stat. Ann. § 57-12-2D. The statute also provides examples of conduct that could potentially violate the UPA. See N.M. Stat. Ann. §§ 57-12-2D(1)-(18) (stating that "unfair or deceptive trade practice means . . . and includes. . . ."). See also Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 14, 811 P.2d 1308, 1311 ("After defining an unfair trade practice, the statute then . . . list[s] examples of conduct which may constitute an unfair trade practice."). Relevant to this Memorandum Opinion and Order are the following: "(5) representing that goods

or services have . . . benefits . . . that they do not have; . . . (8) disparaging the goods . . . of another by false or misleading representations; . . . (14) using . . . ambiguity as to a material fact . . . if doing so deceives or tends to deceive."  N.M. Stat. Ann. § 57–12–2D.

A claim under New Mexico's UPA has four elements:

> First, the complaining party must show that the party charged made an "oral or written statement, visual description or other representation" that was either false or misleading. Second, the false or misleading representation must have been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts."  Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce.  Fourth, the representation must have been of the type that "may, tends to or does, deceive or mislead any person."

Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d at 1311.  "The 'knowingly made' requirement is met if a party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading."  Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 17, 811 P.2d at 1311-12.  See Atherton v. Gopin, 2015-NMCA-003, ¶ 47, 340 P.3d 630, 640-41.  Notably, a plaintiff need not prove detrimental reliance upon the defendant's representations.  See Lohman v. Daimler-Chrysler Corp., 2007-NMCA-100, ¶ 35, 166 P.3d at 1098; Smoot v. Physicians Life Ins. Co., 2004-NMCA-027, ¶¶ 2, 20-23, 87 P.3d 545, 550-51.  The Court has previously construed UPA and has noted that, "in the right circumstances, it could grant judgment as a matter of law on whether a statement is deceptive or misleading" though "generally the question is a matter of fact."  Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 728 F. Supp. 2d 1170, 1193 (D.N.M. 2010)(Browning, J.).  The Court has also concluded that a communication can mislead even if it is not false.  See Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 728 F. Supp. 2d at 1194-95.

## NEW MEXICO LAW REGARDING NEGLIGENCE

Generally, a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause[7] of the plaintiff's damages. See Coffey v. United States, 870 F. Supp. 2d 1202, 1225 (D.N.M. 2012)(Browning, J.)(citing Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 6, 73 P.3d 181, 185-86). "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." Ramirez v. Armstrong, 1983-NMSC-104, ¶ 8, 673 P.2d 822, 825, overruled on other grounds by Folz v. State, 1990-NMSC-075, ¶ 3, 797 P.2d 246, 249. Generally, negligence is a question of fact for the jury. See Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d 728, 729. "A finding of negligence, however, is dependent upon the existence of a duty on the part of the defendant." Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729. "Whether a duty exists is a question of law for the courts to decide." Schear v. Bd. of Cty Comm'rs, 1984-NMSC-079, ¶ 4, 687 P.2d at 729 (citation omitted). Once courts recognize that a duty exists, that duty triggers "a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons." Baxter v. Noce, 1988-NMSC-024, ¶ 11, 752 P.2d 240, 243.

New Mexico courts have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant owes a duty to the plaintiff. See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 7, 73 P.3d at 186. New Mexico courts have recognized that, "[u]ltimately, a

---

[7]The 2004 amendments to Uniform Instruction 13-305 eliminated the word "proximate" within the instruction. Use Note, N.M. Rul. Amend. Civ. UJI 13-305. The drafters added, however, that the change was "intended to make the instruction clearer to the jury and do[es] not signal any change in the law of proximate cause." Editor's Notes, N.M. Rul. Amend. Civ. UJI 13-305 (alteration added).

duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 187 (internal quotation marks omitted). To determine whether the defendant's obligation is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law. See Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 9, 73 P.3d at 186.

"As a general rule, an individual has no duty to protect another from harm." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d 80, 84. "[C]ertain relationships, however, that give rise to such a duty [include]: (1) those involving common carriers, innkeepers, possessors of land; and (2) those who voluntarily or by legal mandate take the custody of another so as to deprive the other of his normal opportunities for protection." Grover v. Stechel, 2002-NMCA-049, ¶ 11, 45 P.3d at 84. "[W]hen a person has a duty to protect and the third party's act is foreseeable, 'such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the [person who has a duty to protect] from being liable for harm caused thereby.'" Reichert v. Atler, 1994-NMSC-056, ¶ 11, 875 P.2d 379, 382.

"[T]he responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 194. "The finder of fact must determine whether Defendant breached the duty of ordinary care by considering what a reasonably prudent individual would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all surrounding circumstances of the present case . . . ." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 33, 73 P.3d at 195.

"A proximate cause of an injury is that which in a natural and continuous sequence [unbroken by an independent intervening cause] produces the injury, and without which the injury would not have occurred." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195. "It need not be the only cause, nor the last nor nearest cause." Herrera v. Quality Pontiac, 2003-NMSC- 018, ¶ 34, 73 P.3d at 195. "It is sufficient if it occurs with some other cause acting at the same time, which in combination with it, causes the injury." Herrera v. Quality Pontiac, 2003-NMSC-018, ¶ 34, 73 P.3d at 195.

## NEW MEXICO LAW REGARDING NEGLIGENT MISREPRESENTATION

To prevail on a negligent misrepresentation in New Mexico courts, a plaintiff must show: "(1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff." Robey v. Parnell, 2017-NMCA-038, ¶ 31, 392 P.3d 642, 652 (citing Saylor v. Valles, 2003-NMCA-037, ¶ 17, 63 P.3d 1152, 1158).[8]

_____

[8]The Supreme Court of New Mexico has not expressly adopted this four-part negligent misrepresentation definition, but has stated that New Mexico follows the Restatement (Second) of Torts § 552 (1977) when it comes to negligent misrepresentation. See Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 1988-NMSC-014, ¶ 16, 750 P.2d 118, 122. That restatement section states:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

>> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"The theory of liability for this tort is one of negligence rather than of intent to mislead." Sims

> (b) through reliance upon it in a transaction that he intends the information
> to influence or knows that the recipient so intends or in a substantially
> similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends
> to loss suffered by any of the class of persons for whose benefit the duty is created,
> in any of the transactions in which it is intended to protect them.

Restatement (Second) of Torts § 552 (1977). The Court cannot discern a meaningful difference between the Court of Appeals of New Mexico's four elements and the Restatement (Second) of Torts § 552(1)-(2). Under those sections, a defendant is liable for negligent misrepresentation when he or she "supplies false information" to the plaintiff; the plaintiff "justifiabl[y] reli[es] upon the information"; the defendant "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information"; and the defendant "intend[ed] the information to influence or knows that the recipient so intends" to use the information. Restatement (Second) of Torts § 552. Those elements mirror the Court of Appeals of New Mexico's negligent misrepresentation test.

The Restatement (Second) of Torts § 552 does, however, state that those with a public duty to give information may be liable for negligent misrepresentation for statements made to "the class of persons for whose benefit the duty is created in any of the transactions in which it is intended to protect them." Restatement (Second) of Torts § 552(3). The Court could not locate a New Mexico case applying negligent misrepresentation liability based on the public duty theory. New Mexico's Uniform Jury Instructions for negligent misrepresentation mirror Court of Appeals of New Mexico's test:

> A party is liable for damages caused by his negligent and material
> misrepresentation.
>
> A material misrepresentation is an untrue statement which a party intends the
> other party to rely on and upon which the other party did in fact rely.
>
> A negligent misrepresentation is one where the speaker has no reasonable ground
> for believing that the statement made was true.

N.M.R.A., Civ. UJI 13-1632. Although this jury instruction does not mention the public duty theory of negligent misrepresentation, its omission is not determinative. See State v. Wilson, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 796, 867 P.2d 1175, 1178 (stating that the Supreme Court of New Mexico's "adoption of uniform jury instructions proposed by standing committees . . . establishes a presumption that the instructions are correct statements of law, that fact alone is not sufficient precedent to tie the hands of the Court of Appeals"). Given the Supreme Court of New Mexico's express adoption of the Restatement (Second) of Torts' definition for negligent misrepresentation, see Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A., 1988-NMSC-014, ¶ 16, 750 P.2d at 122, the Court sees no reason why the Supreme Court of New Mexico would not, given the chance, recognize a public duty theory of negligent misrepresentation.

v. Craig, 1981-NMSC-046, ¶ 4, 627 P.2d 875, 877 (citing W. Prosser, Handbook of the Law of Torts § 107 (4th ed. 1971)).  See Ledbetter v.Webb, 1985-NMSC-112, ¶ 26, 711 P.2d 874, 879 (distinguishing negligent misrepresentation from the intentional torts of fraud or deceit).  These elements do not require that the parties have entered into a contract or partnership.  See Leon v. Kelly, No. CIV 07-0467, 2008 WL 5978926, at *7 (D.N.M. Dec. 8, 2008)(Browning, J) ("Negligent misrepresentation is a tort, and while it requires a professional or business relationship to a certain degree, it does not require an actual contract or partnership."); Sims v. Craig, 1981-NMSC-046, ¶ 4, 627 P.2d at 876-77 (holding that the plaintiff could bring an action for negligent misrepresentation although the plaintiff could not sue on the contract because the contract was void).

## NEW MEXICO LAW REGARDING CONTRACT INTERPRETATION

In contract cases, "the role of the court is to give effect to the intention of the contracting parties."  Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 21, 925 P.2d 1184, 1190.  "The primary objective in construing a contract is not to label it with specific definitions or to look at form above substance, but to ascertain and enforce the intent of the parties as shown by the contents of the instrument."  Bogle Farms, Inc. v. Baca, 1996-NMSC-051, ¶ 21 (citing Shaeffer v. Kelton, 1980-NMSC-117, ¶8, 619 P.2d 1226, 1229).  "The parol evidence rule 'bars admission of evidence extrinsic to the contract to contradict and perhaps even supplement the writing.'" Mem'l Med. Ctr., Inc. v. Tatsch Const., Inc., 2000-NMSC-030, ¶ 16, 12 P.3d 431, 437 (citation omitted).  If a contract is ambiguous, however, "evidence will be admitted to aid in interpreting the parties' expressions."  C.R. Anthony Co. v. Loretto Mall Partners, 1991 NMSC-070, ¶ 12, 817 P.2d 238, 242 (citation omitted).  "On the other hand, if the court determines that the contract is clear and unambiguous on its face, evidence of the circumstances surrounding the

transaction is inadmissible to vary or modify its terms." C.R. Anthony Co. v. Loretto Mall Partners, 1991 NMSC-070, ¶ 12, 817 P.2d at 242 (emphasis in original)(citation omitted).

The question whether an agreement contains an ambiguity is a matter of law. See Mark V., Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d 1232, 1235 (citing Levenson v. Mobley, 1987-NMSC-102, ¶ 7, 744 P.2d 174, 176). "An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citation omitted). If, however, the "evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235. If, however, the court finds that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 (citing Vickers v. North Am. Land Dev., Inc., 1980-NMSC-021, ¶ 9, 607 P.2d 603, 606). New Mexico courts may consider extrinsic evidence to determine "whether the meaning of a term or expression contained in the agreement is actually unclear." Mark V. Inc. v. Mellekas, 1993-NMSC-001, ¶ 12, 845 P.2d at 1235 ("New Mexico law, then, allows the court to consider extrinsic evidence to make a preliminary finding on the question of ambiguity."); C.R. Anthony Co. v. Loretto Mall Partners, 1991-NMSC-070, ¶ 15, 817 P.2d at 242-43 ("We hold today that in determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." (citation and footnote omitted)). Once the court concludes that an ambiguity exists, the resolution of that ambiguity becomes a question of fact. See Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 13, 845 P.2d at 1235. To decide an ambiguous term's meaning, "the fact finder may consider extrinsic evidence

of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent." Mark V, Inc. v. Mellekas, 1993-NMSC-001, ¶ 13, 845 P.2d at 1236. New Mexico contract law "requires the construction of ambiguities and uncertainties in a contract most strongly against the party who drafted the contract." Schultz & Lindsay Const. Co., 1972-NMSC-013, ¶ 6, 494 P.2d 612, 614. See Rummel v. Lexington Ins. Co., 1997-NMSC-041, ¶ 22, 945 P.2d 970, 977 ("An ambiguity in an insurance contract is usually construed against the insurer, because courts will weigh their interpretation against the party that drafted a contract's language.").

## LAW REGARDING ATTORNEY'S FEES

The obligation to pay attorneys' fees can arise by statute or contractual agreement. See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. 250, 251-52 (D. Colo. 1992)(Kane, J.)(citing F.D. Rich, Inc. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116 (1974)). See also Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc., 188 F. Supp. 3d 1097, 1159 (D.N.M. 2016)(Browning, J.)(stating that the Uniform Trust Code "provides the Court with broad discretion to award attorney's fees in litigation involving the administration of a trust as justice and equity may require"). Whether the obligation to pay reasonable attorneys' fees arises from statute or contract, the court's analysis of the reasonableness of the fees is similar. See United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d 1533 (10th Cir. 1987)). The Tenth Circuit has explained that, in evaluating fees that a contract awards, the Court may consider "the familiar factors from the federal court cases awarding fees in the statutory context" as Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983),

defines them.  United States ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc., 834 F.2d at 1550).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).  The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assoc., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. at 433, and Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 543-44 (2010)).  "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates."  United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000).  See New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233).  Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."  Robinson v. City of Edmond, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community."  New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23 (quoting Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)).  See Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996).  The party entitled to fees must

provide the district court with sufficient information to evaluate prevailing market rates. <u>See</u> <u>Lippoldt v. Cole</u>, 468 F.3d at 1225. Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community and for similar work. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984). <u>See</u> <u>Case v. Unified Sch. Dist. No. 233</u>, 157 F.3d 1243, 1255-56 (10th Cir. 1998); <u>Ramos v. Lamm</u>, 713 F.2d at 555 ("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), <u>overruled in part on other grounds</u>, <u>Pennsylvania v. Del. Valley Citizens' Council for Clean Air</u>, 483 U.S. 711, 725 (1987). Courts may also consider their own knowledge of market rates. <u>See</u> <u>Lippoldt v. Cole</u>, 468 F.3d at 1225. The party seeking fees "should submit evidence supporting the hours worked and rates claimed." <u>Hensley v. Eckerhart</u>, 461 U.S. at 434. Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level." <u>Hensley v. Eckerhart</u>, 461 U.S. at 436-37. <u>See</u> <u>General Protecht Grp., Inc. v. Leviton Manufacturing Co.</u>, 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level."); <u>Ysasi v. Brown</u>, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.). The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest advanced by the litigation. <u>See</u> <u>Farrar v. Hobby</u>, 506 U.S. 503, 120-22 (1992). The Court has discretion "to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable." <u>United States ex rel. Trustees of the Colo. Laborers</u> <u>Health & Welfare Trust Fund & Expert Env'l Control, Inc.</u>, 790 F. Supp. at 251-52 (citing <u>United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.</u>, 834 F.2d at

1548).  In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award."  Hensley v. Eckerhart, 461 U.S. at 438.

## ANALYSIS

Liberty Mutual's affirmative defense that Value Inn did not satisfy conditions precedent for bringing legal action fails.  The Court concludes that the Supreme Court of New Mexico would require a showing that the defendant suffered substantial prejudice before it would dismiss a complaint filed before the plaintiff satisfied a contract's conditions precedent to filing suit where there is a substantial probability that dismissing the claim would prevent the plaintiff from ever obtaining relief.  Here, if the Court dismissed Value Inn's Complaint, there is a substantial probability that any subsequent case asserting those claims would be untimely; moreover, there is nothing that Court can properly consider when deciding this motion to dismiss indicating that Liberty Mutual suffered substantial prejudice.  Value Inn states a claim for relief for breach of contract, insurance bad faith, and some UIPA violations.  The Court will, however, dismiss some of Value Inn's UIPA claims, all of its UPA claims, and its negligent misrepresentation claim for failing to state a claim upon which relief can be granted.  The Court will not abate this action. The Court, therefore, grants in part and denies in part the MTD.

## I.      THAT VALUE INN FAILED TO SATISFY ITS INSURANCE POLICY'S CONDITIONS PRECEDENT TO SUIT DOES NOT BAR VALUE INN'S CLAIMS.

According to the  Complaint, Value Inn has not satisfied the Contract's conditions precedent for bringing action against Liberty Mutual.  The Contract states that "[n]o one may bring legal action against [Liberty Mutual] under this Coverage Part unless . . . there has been full compliance with all the terms of this Coverage Part."  Contract ¶ D(1), at 10.[9]  The Contract

---

[9]The Court can consider the Contract -- which Liberty Mutual attached to its MTD -- in its analysis without converting the motion to dismiss to a motion for summary judgment under

also states -- in its "Duties In The Event Of Loss Or Damage" section -- that Liberty Mutual "may examine any insured under oath . . . at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records." Contract ¶ 3(b), at 8.

Liberty Mutual argues that "submitting to an EUO and providing documentation of the alleged loss are conditions precedent to suit." MTD at 8.[10] The Court agrees.[11] The Court does

---

rule 56 of the Federal Rules of Civil Procedure, because Value Inn references the Contract through its Complaint, and the Contract is central to Value Inn's claim. The general rule for a motion to dismiss is that, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A court may, however, consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002). Consequently, if a complaint refers to a document central to the plaintiff's claim without attaching it or incorporating by reference, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d at 1384. See 5A C. Wright & A. Miller, Fed. Prac. & Proc. § 1327, at 438-39 (3d ed. 2004).

Value Inn references the Contract throughout its Complaint. See, e.g., Complaint ¶¶ 11-13, at 4-5 (discussing and quoting the Contract's appraisal clause); Complaint ¶ 14, at 5-6 (discussing and quoting the Contract's requirements for taking legal action against Liberty Mutual). The Contract is central to Value Inn's Complaint, because he seeks enforcement of its appraisal clause. See Complaint ¶ 38(a) (requesting that the Court order "that this claim proceed through the appraisal process in the policy"). Moreover, Value Inn does not dispute the Contract's authenticity.

[10]Affirmative defenses can be considered on a motion to dismiss when the facts establishing the affirmative defense are apparent on the face of the complaint. See Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(Hill, J.)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule.").

[11]Federal courts sitting in diversity apply the state's substantive law and federal procedural law. See Am. Mech. Sols., L.L.C. v. Northland Process Piping, Inc., 184 F. Supp. 3d 1030, 1060 n.13 (D.N.M. 2016)(Browning, J.)(citing Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1539 (10th Cir.1996)). The Tenth Circuit explains:

not see a reasonable interpretation of the Contract besides that "full compliance with all the terms of this Coverage Part," Contract ¶ D(1), at 10, includes the Contract's provision that, in the event of loss or damage, an insured must submit to an EUO and provide requested documents, see Contract ¶ 3(b).[12]  Neither party requests a <u>Mark V.</u> hearing[13] nor do they argue that these

> Although the distinction between substance and procedure is not always clear, we can distinguish a substantive rule from a procedural rule by examining the language and the policy of the rule in question. If these inquiries point to achieving fair, accurate, and efficient resolutions of disputes, the rule is procedural. If, however, the primary objective is directed to influencing conduct through legal incentives, the rule is substantive.

<u>Sims v. Great Am. Life Ins. Co.</u>, 469 F.3d 870, 883 (10th Cir. 2006).  Federal law, specifically rule 12(b)(6), structures the Court's inquiry on a motion to dismiss, but New Mexico law determines whether Value Inn's failure to satisfy conditions precedent to suit means that it fails to state a claim for relief upon which relief can be granted.  To that end, New Mexico courts have determined clearly worded contract provisions barring legal action against one party unless the other party satisfies certain conditions precedent are valid.  See <u>Rushing v. Lovelace-Bataan Health Program</u>, 1979-NMSC-054, ¶¶ 3-5, 598 P.2d 211, 212 (concluding that the plaintiff could not bring a legal action because he had not satisfied a contract's condition precedent that he first file a written claim to the defendant);  <u>Pillsbury v. Blumenthal</u>, 1954-NMSC-066, ¶ 5, 272 P.2d 326, 328–29 (stating that "[t]he authorities are in accord that parties may agree to make arbitration a condition precedent to suit, but the burden in this instance was upon appellants to establish such affirmative defense by showing a complete and enforceable arbitration agreement" (citation omitted)).

[12]Several courts have determined that similar language is unambiguous with regard to whether an insured's duty after a loss is a condition precedent of bringing action against the insurer.  <u>See</u>, <u>e.g.</u>, <u>Armstead v. Allstate Prop. & Cas. Ins. Co.</u>, No. 1:14-CV-586, 2015 WL 2408049, at *3 (N.D. Ga. May 20, 2015)(Duffey Jr., J.)(unpublished)(indicating that an insured's contractual duties in the event of a loss are conditions precedent to bring a suit against the insurer); <u>Keys v. State Farm Mut. Auto. Ins. Co.</u>, No. 2:12-CV-1181, 2013 WL 3198397, at *4 (D. Nev. June 21, 2013)(Mahan, J.)(unpublished)("The clear terms of this policy required plaintiff to cooperate with defendant's request in evaluating a UIM claim."); <u>State Farm Fire & Cas. Co. v. Michael</u>, 822 F. Supp. 575, 580 (W.D. Ark. 1993)(Waters, C.J.)(concluding that an insured's duties to promptly provide written notice of certain events are, "under any reasonable and fair definition of the term," conditions precedent to bringing legal action against the insurer).

[13]A <u>Mark V</u> hearing refers to a hearing, required by the Supreme Court of New Mexico in <u>Mark V., Inc. v. Mellekas</u>, 1993-NMSC-001, ¶¶ 12-13, 845 P.2d at 1235-36, to determine whether an agreement contains an ambiguity.  If the "evidence is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law."

provisions are ambiguous. No party states that there is evidence that the Court needs to consider to determine whether there is an ambiguity. Moreover, Value Inn does not dispute that submitting to an EUO and providing requested documents is a condition precedent to bringing suit; in its Response, Value Inn contends only that Liberty Mutual is incorrect that Value Inn has "refused to submit to an EUO," because there is an EUO "set for September 1, 2017 in Las Cruces, New Mexico." Response ¶ 7, at 4. Value Inn references the Contract's provision about bringing a legal action against Liberty Mutual only to argue that it "had no choice but to file suit" when it did, because the Contract requires that it bring action within two years form the date that the loss or damage occurs. Response ¶ 7, at 4 (citing Contract ¶ D(2), at 10).

In considering a motion to dismiss, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. Even taking the Complaint's facts in the light most favorable to Value Inn, however, the Complaint establishes that Value Inn, when it filed its Complaint, had not submitted to an EUO or provided requested documents. See, e.g., Complaint ¶ 10, at 4 ("There is simply no need to force plaintiff to accumulate documents that are irrelevant and serve no legitimate purpose."); Complaint ¶ 12, at 4-5 (arguing that the "appraisal process will address Defendants' issues regarding pre existing damage and cause of loss, thus obviating the need for extensive pre litigation document production and testimony"); Complaint ¶ 38(a), at 12 (requesting that the Court declare "that an EUO is not appropriate in this matter").

The Court does not want to dismiss the importance of an EUO and providing information

---

Mark V, 1993-NMSC-001, ¶ 13, 845 P.2d at 1235. If, however, the court concludes that the contract is "reasonably and fairly susceptible of different constructions, an ambiguity exists." 1993-NMSC-001, ¶ 13, 845 P.2d at 1235.

to the insurance company before suing.  The Supreme Court of New Mexico most likely does not want its state courts flooded with suits against insurance companies filed before the insurance company has some chance to investigate, evaluate, settle, or resolve its claims.  The Court concludes that, in most cases, the Supreme Court of New Mexico would enforce an insurance policy's provisions requiring that the insured submit to an EUO and provide certain documents even if the insurance company does not show substantial prejudice.  The Court not believe, however, that the Supreme Court of New Mexico would apply that general rule to the unique facts of this case, because there is a substantial probability that dismissing Value Inn's Complaint would effectively extinguish Value Inn's ability to recover anything from Liberty Mutual.[14]

---

[14]Value Inn has not amended its Complaint or asked the Court to give it leave to do so. The Court will not, in any case, give Value Inn an opportunity to amend its complaint sua sponte. Although Value Inn may have satisfied the conditions precedent after it filed the Complaint but before the Contract's two-year limit barred its claim -- the Contract states that a legal action must be brought within two years of the damage, see Contract ¶ D, at 10; the damage occurred on or about October 21, 2015, see Complaint ¶ 6, at 2; and Value Inn apparently submitted to an EUO on September 1, 2017, see Response ¶ 7, at 4 (stating, on August 28, 2017, that Value Inn had agreed to submit to an EUO on September 1, 2017); Reply at 3 (stating that the EUO occurred but that, as of September 11, 2017, Value Inn had not provided all requested documents) -- amending the Complaint would not cure the Complaint's deficiency that existed at the time of its filing.  Rule 15's plain language states that an amendment "relates back to the date of the original pleading."  Fed. R. Civ. P. 15(c)(1) (emphasis added).  In Reynolds v. United States, for example, a plaintiff filed a complaint before meeting a condition precedent for bringing legal action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671-80.  See Reynolds v. United States, 784 F.2d 291, 292 (1984).  After the district court dismissed the complaint for being premature, the plaintiff met the condition precedent, served the defendants, and filed an amended complaint.  See Reynolds v. United States, 784 F.2d at 292-93.  Looking to rule 15(c)'s plain language, the United States Court of Appeals for the Fifth Circuit determined that the amended complaint related back to the date on which the plaintiff filed the original complaint and not to the date on which she served the defendants.  See Reynolds v. United States, 748 F.2d at 293.  The Fifth Circuit explained:

> The date of Ms. Reynolds' original pleading was August 10, 1982; Rule 15(c) gave the district court no authority to relate Ms. Reynolds' amended complaint back to any date except August 10, 1092.  On that date, the court lacked subject

The Court bases its prediction on the Supreme Court of New Mexico precedent indicating that an insurance company's obligations under an insurance policy may persist even when an insured breaches a policy's provision. In <u>Found. Reserve Ins. Co. v. Esquibel</u>, 1980-NMSC-019, ¶ 15, 607 P.2d 1150, 1152 ("<u>Esquibel</u>"), the Supreme Court of New Mexico faced "a matter of first impression in New Mexico regarding the standard for voiding an insurance policy based on a material breach by the insured." 1980-NMSC-019, ¶ 2, 607 P.2d at 1150. The Supreme Court of New Mexico indicated that, when an insurance company seeks to avoid paying a claim on an insurance policy, <u>i.e.</u>, "to be relieved of its obligation under [an] insurance policy," 1980-NMSC-019, ¶ 9, 607 P.2d at 1151, because of an insured's policy violation, a "threshold issue" is whether the "breach of policy provisions is a substantial and material one." 1980-NMSC-019, ¶ 11, 607 P.2d at 1150. The Supreme Court of New Mexico reasoned that, according to "[t]he weight of authority and the trend nationally," satisfying that threshold issue means that "substantial prejudice to the insuror . . . may be advanced as an affirmative defense to claims by the insured or third parties," 1980-NMSC-019, ¶ 13, 607 P.2d at 1152, and "h[e]ld this standard to be applicable in New Mexico as well, 1980-NMSC-019, ¶ 14, 607 P.2d at 1152. The Supreme Court of New Mexico determined that Esquibel committed a "substantial and material"

---

matter jurisdiction of Ms. Reynolds' claim. . . . Filed on a date on which the court lacked jurisdiction, [the amended complaint] related back to a date on which the court also lacked jurisdiction.

<u>Reynolds v. United States</u>, 748 F.2d at 293. <u>Kreider Dairy Farms, Inc. v. Glickman</u>, 190 F.3d 113, 121 (3d Cir. 1999)("An amended complaint that purports to relate back to an original complaint asserting an improper appeal which was filed on a date upon which the District Court would have lacked jurisdiction over the appeal raised in the amended complaint, must be dismissed for lack of jurisdiction." (citing <u>Reynolds v. United States</u>, 748 F.2d 291, 293 (5th Cir.1984)). <u>Cf.</u> <u>Wilson v. People By & Through Dep't of Pub. Works</u>, 271 Cal. App. 2d 665, 669 (Cal. Ct. App. 1969)("A subsequent pleading which sets out the subsequent performance of a statutory condition precedent to suit cannot relate the time of performance of the condition back to the time of the filing of the original complaint . . . .").

breach, 1980-NMSC-019, ¶ 11, 607 P.2d at 1151, but that "the insuror must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before it will be relieved of its obligations under a policy," 1980-NMSC-019, ¶ 15, 607 P.2d at 1152.

Exactly one year later, the Supreme Court of New Mexico refused to extend its Esquibel reasoning to a time-to-sue provision in an insurance contract. See Sanchez v. Kemper Ins. Companies, 1981-NMSC-032, ¶ 12, 632 P.2d 343, 345. Sanchez draws a distinction by observing that, in Esquibel, "this Court considered a cooperation provision in an insurance contract," and "held that such a cooperation provision could only be enforced upon (1) a showing of lack of cooperation in some substantial and material respect, and (2) a showing of substantial prejudice to the insurer as a result of the breach." 1981-NMSC-032, ¶ 9, 632 P.2d at 344-45. According to Sanchez, "[t]he purpose of a cooperation clause in an insurance contract is 'to prevent collusion between the insured and the injured, as well as to make possible the insurer's investigation.'" 1981-NMSC-032, ¶ 10, 632 P.2d at 345 (quoting M.F.A. Mut. Ins. Co. v. Cheek, 363 N.E.2d 809, 811 (Ill. 1977)). Sanchez reasons that, because "the reason for such a clause is fear of prejudice to the insurer, it is reasonable to require a showing of prejudice." 1981-NMSC-032, ¶ 10, 632 P.2d at 345. Sanchez also reasons that "the policy considerations are different for a time-to-sue provision," and "the purpose of a time-to-sue provision is not necessarily fear of prejudice to the insure[r]." 1981-NMSC-032, ¶ 11, 632 P.2d at 345. Sanchez accordingly concludes that, "[w]here an insurer raises the affirmative defense of violation of a time-to-sue provision, it need not show that it was prejudiced by violation of the provision. It need only show the breach." 1981-NMSC-032, ¶ 12, 632 P.2d at 345.

Eleven years later, the Supreme Court of New Mexico decided <u>Roberts Oil Co. v.</u>

<u>Transamerica Ins. Co.</u>, 1992-NMSC-032, 833 P.2d 222 ("<u>Roberts Oil</u>"), in which two insurance

companies

> defend[ed] two partial summary judgments relieving them of liability under their
> respective insurance policies for an incident of groundwater contamination that
> occurred several years before they were notified of the insured's claims against
> them and after the insured had assumed substantial obligations and incurred
> significant expenses to remediate the contamination. The insured appeal[ed] from
> the summary judgments, arguing that, even if it breached a clause in the policies
> providing that it would not make such voluntary payments, the breach did not
> discharge the insurers absent prejudice to them.

<u>Roberts Oil</u>, 1992-NMSC-032, ¶ 2, 833 P.2d at 222–23. In <u>Roberts Oil</u>, the Supreme Court of

New Mexico rejected an attempt to limit <u>Esquibel</u> in two ways. First, the <u>Roberts Oil</u> defendants

tried to restrict <u>Esquibel</u> to cases where requiring substantial prejudice protects innocent third

parties, see <u>Roberts Oil</u> 1992-NMSC-032, ¶ 23, 833 P.2d at 228, but the Supreme Court of New

Mexico "th[ought] that the rationale behind *Esquibel* cannot be limited so narrowly," <u>Roberts Oil</u>

1992-NMSC-032, ¶ 24, 833 P.2d at 228. See <u>id.</u> ("There is no indication in the opinion, nor any

in the many other cases requiring a showing of actual prejudice, that the rule operates only when

an innocent third party is or has been injured."). Second, the <u>Roberts Oil</u> defendants argued that

<u>Esquibel</u> applies to cases where an insured breaches only a cooperation clause in an insurance

contract and not "when the insured breaches other provisions, such as the voluntary payment and

no action provisions in this case." 1992-NMSC-032, ¶ 25, 833 P.2d at 229. The voluntary

payment clause at issue in <u>Roberts Oil</u> states that, "'[t]he insured shall not, except at his own

cost, voluntarily make any payment, assume any obligation or incur any expense,'"

1992-NMSC-032, ¶ 8, 833 P.2d at 224, while the no action clause states that, "'[n]o action shall

lie against the company unless, as a condition precedent thereto, there shall have been full

compliance with all of the terms of this policy,'" 1992-NMSC-032, ¶ 9, 833 P.2d at 224. The

Supreme Court of New Mexico was "willing for purposes of this case to accede to the insurers' argument that the no action clause does indeed convert the voluntary payment clause from a promise by the insured to an express condition to the insurer's obligations," 1992-NMSC-032, ¶ 34, 833 P.2d at 231, but the Supreme Court of New Mexico concluded that "this distinction" -- between the insurance policy provision at issue in Esquibel and "the voluntary payment and no action provisions in this case" -- "is one without a difference," 1992-NMSC-032, ¶ 25, 833 P.2d at 228.

Roberts Oil reaches that result by "focusing on the purpose of the particular clause in question and inquiring whether that purpose will be advanced by applying it to the dispute in a given case." 1992-NMSC-032, ¶ 27, 833 P.2d at 229.

> When enforcement does not serve the reasons for the provision's inclusion in the policy, the insured's reasonable expectation that coverage will not be arbitrarily denied must be given effect. In short, the authority of the provision is limited by the reality of the way insurance policies are bought and sold; the effect of the provision is limited by the reasonable expectations of the insured.
>
> We hold that time limit on commencement of suit clauses, notice of loss clauses, proof of loss clauses, and cooperation clauses should all be reviewed on the basis of whether their application in a particular case advances the purpose for which they were included in the policy. Only by so reviewing these clauses can courts satisfy the consumer's reasonable expectation that coverage will not be defeated on arbitrary procedural grounds.

1992-NMSC-032, ¶ 25, 833 P.2d at 228 (citations omitted)(quoting Estes v. Alaska Ins. Guar. Ass'n, 774 P.2d at 1318). Roberts Oil quotes the Supreme Court of Connecticut's similar reasoning:

> In our judgment, a proper balance between the interests of the insurer and the insured requires a factual inquiry into whether, in the circumstances of a particular case, an insurer has been prejudiced by its insured's delay in giving notice of an event triggering insurance coverage. If it can be shown that the insurer suffered no material prejudice from the delay, the nonoccurrence of the condition of timely notice may be excused because it is not, in Restatement terms, 'a material part of the agreed exchange.' **Literal enforcement of notice**

**provisions when there is no prejudice is no more appropriate than literal enforcement of liquidated damages clauses when there are no damages.**

Roberts Oil, 1992-NMSC-032, ¶ 30, 833 P.2d at 230 (emphasis added)(quoting Aetna Casualty & Surety Co. v. Murphy, 538 A.2d at 223).

According to Roberts Oil, Sanchez correctly "undertook this same type of analysis," but it distinguished Esquibel's policy analysis regarding cooperation clauses by relying on policy "considerations [that] either duplicate those underlying a cooperation clause (preventing fraud or collusion and protecting the insurer's interests) or replicate policies behind the statute of limitations (encouraging prompt assertion of legal claims and cutting off stale claims)." Roberts Oil 1992-NMSC-032, ¶ 27, 833 P.2d at 229. Roberts Oil comments that, "while we agree with the *Sanchez* approach of focusing on the purpose of the contractual provision at issue, we question the Court's analysis of the relevant considerations underlying the respective policy provisions." Roberts Oil, 1992-NMSC-032, ¶ 29, 833 P.2d at 230.

An argument can be made that Roberts Oil requires a showing of substantial prejudice whenever an insured fails to satisfy a condition precedent to suit, including an insurance policy's EUO and document production requirements.[15] The Court is not inclined to go that route. First,

---

[15]The Supreme Court of New Mexico dismissed, out of hand, the suggestion that Roberts Oil's no action clause materially altered Esquibel's analysis even though it was willing to read the no action clause as converting ordinary contract provisions into "an express condition to the insurer's obligations," 1992-NMSC-032, ¶ 34, 833 P.2d at 231. Roberts Oil instead declares that that "this distinction" -- between the insurance policy provision at issue in Esquibel and "the voluntary payment and no action provisions in this case" -- "is one without a difference," 1992-NMSC-032, ¶ 25, 833 P.2d at 228. That declaration could reasonably be read as vitiating the distinction between insurance policies that contain a "clause [that] makes full compliance with all of the policy terms a condition precedent to an action against the company" and policies that lack such a clause. Roberts Oil 1992-NMSC-032, ¶ 34, 833 P.2d at 231.

The Supreme Court of New Mexico has shown no sign of reversing course. On the contrary, State Farm Mut. Auto. Ins. Co. v. Fennema, 2005-NMSC-010, 110 P.3d 491 ("Fennema"), extends Esquibel's and Roberts Oil's reasoning. Fennema reads Esquibel as articulating a "substantial prejudice rule[, which] provides that an insurer 'must demonstrate substantial prejudice as a result of a material breach of the insurance policy by the insured before

Roberts Oil is distinguishable. Roberts Oil considers whether an insured's material breach of an insurance policy voids that policy. See 1992-NMSC-032, ¶ 2, 833 P.2d at 222-23 ("The insurers defend two partial summary judgments relieving them of liability under their respective insurance policies"), id. at ¶ 35, 833 P.2d at 231 (stating that an insured's material "breach or nonoccurrence of a condition does not discharge the insurer absent a showing that the insurer has been substantially prejudiced"). Here, by contrast, Liberty Mutual does not argue that the Contract is void. See MTD at 13 ("Based upon the provisions of the Policy and the preceding case law, Plaintiff's appraisal demand is premature and fails to meet the *Twombly* plausibility threshold."); id. at 22 (asking the court to declare Value Inn's "request for appraisal and this lawsuit are premature" and to determine that the Complaint's counts "fail to state a claim"). Thus Roberts Oil does not consider the need for showing substantial prejudice when it comes to conditions precedent to bringing suit, satisfaction of which can benefit the parties -- and the courts -- by promoting settlement.

Second, the Court does not think that the Supreme Court of New Mexico would apply Roberts Oil so broadly in this case, because requiring a showing of substantial prejudice every time a plaintiff failed to satisfy the particular conditions precedent to bring suit might get close to gutting the conditions precedent to bring suit altogether, because prejudice, much less

_____

it will be relieved of its obligations under a policy.'" Fennema 2005-NMSC-010, ¶ 7, 110 P.3d at 493 (quoting Esquibel 1980-NMSC-019, ¶ 15, 607 P.2d at 1152). "The rationale for the rule is that failure by an insurer to show substantial prejudice by an insured's breach will frustrate the insured's reasonable expectation that coverage will not be denied arbitrarily." Fennema 2005-NMSC-010, ¶ 7, 110 P.3d at 493 (citing Roberts Oil 1992-NMSC-032, ¶¶ 27-28, 833 P.2d at 229). Feenema observes that "[o]ur courts have applied the substantial prejudice rule to cooperation provisions, voluntary payment provisions, and misrepresentation and concealment provisions," and extended the substantial prejudice rule to consent-to-settle provisions. Fennema 2005-NMSC-010 ¶ 11, 110 P.3d at 494.

substantive prejudice, may be rare. Further, in most situations, strict application of the EUO and production document requirement conditions precedent to bring suit will be highly beneficial and preferred by enabling parties to resolve claims outside the courtroom.

Nonetheless, Roberts Oil's unwillingness to enforce -- absent substantial prejudice to the insurer -- a provision to void a policy for the insured's provision violation leads the Court to believe that the Supreme Court of New Mexico would, in this case and under these circumstances, not dismiss the Complaint for Value Inn's failure to satisfy the Contract's conditions precedent to suit. Although Liberty Mutual does not ask the Court to void the Contract nor to bar Value Inn from filing another claim against it in the future, granting Liberty Mutual's motion to dismiss would likely achieve effectively the same result. The Contract's time-to-sue provision states that Value Inn cannot bring legal action against Liberty Mutual unless that action is brought within two years of the damage date. See Contract ¶ D, at 10. Here, Value Inn allegedly suffered property damage on October 23, 2015. See Complaint ¶ 7, at 2-3. Thus, the two-year window has closed. If the time-to-sue provision is enforceable, dismissing the Complaint -- even without prejudice -- would mean that Value Inn could not sue on his Contract, in which case there would be nothing stopping Liberty Mutual from not performing. Value Inn's only hope would be to fashion a clever cause of action that, somehow, falls outside the time-to-sue provision's scope, or for Value Inn to convince a court that applying the time-to-sue provision violates public policy. The Court can imagine potential arguments why the time-to-sue provision is not enforceable,[16] but their success is not guaranteed. The uncertainty about

---

[16]Value Inn could at that time argue that the court should not enforce the Contract's time-to-sue provision because Liberty Mutual is not substantially prejudiced by its filing after the time-to-sue provision's two-year limit. Although Sanchez states that enforcing a time-to-sue provision does not require showing substantial prejudice, Roberts Oil strongly indicates that,

given the chance, it would overrule <u>Sanchez</u> on that point. <u>See</u> <u>Roberts Oil</u>, 1992-NMSC-032, ¶ 29, 833 P.2d at 230.

Value Inn might also argue that the Contract's time-to-sue provision is unenforceable, because it begins to run on the damage date and not the date of accrual. Liberty Mutual contends that time-to-sue provisions are enforceable in New Mexico. <u>See</u> Reply at 11 (citing <u>State ex rel. Udall v. Colonial Penn Ins. Co.</u>, 1991-NMSC-048, ¶ 6, 812 P.2d 777, 779; <u>Young v. Seven Bar Flying Serv., Inc.</u>, 1984-NMSC-069, ¶¶ 10-12, 685 P.2d 953, 956; <u>City of Santa Fe v. Travelers Cas. & Sur. Co.</u>, No. 28,944, 2009 WL 6764000, at *1 (N.M. Ct. App. Jan. 14, 2009)). In New Mexico, time-to-sue provisions are enforceable unless they violate public policy. <u>See</u> <u>State ex rel. Udall v. Colonial Penn Ins. Co.</u>,1991-NMSC-048, ¶ 6, 812 P.2d at 779. The general rule is that time-to-sue provisions setting limits shorter than New Mexico's general six-year contract claim statute of limitations do not violate public policy. <u>See</u> <u>Elec. Gin Co. v. Firemen's Fund Ins. Co.</u>, 1935-NMSC-001, ¶¶ 1-6, 39 P.2d 1024, 1024-25. <u>See</u> also <u>Turner v. New Brunswick Fire Ins. Co. of New Brunswick, N. J.</u>, 1941-NMSC-014, ¶ 6, 112 P.2d 511, 513 (rejecting the argument that "a one-year limitation period is void because it shortens the statutory period of six years for commencing actions on written contracts" (citing <u>Electric Gin Co. v. Firemen's Fund Insurance Co.</u>, 1935-NMSC-001, ¶¶ 1-6, 39 P.2d 1024, 1024-25)); <u>Sandoval v. Valdez</u>, 1978-NMCA-016, ¶ 39 , 580 P.2d 131, 136 ("It is established law in New Mexico that a 'No Cause of Action' clause in a fire insurance policy, or in a Livestock Transportation policy, is enforceable." (citing <u>Elec. Gin Co. v. Firemen's Fund Ins. Co.</u>, 1935-NMSC-001, ¶¶ 1-6, 39 P.2d 1024, 1024-25; <u>Sandoval v. Valdez</u>, 1978-NMCA-016, ¶ 39, 580 P.2d 131, 136; <u>Wiseman v. Arrow Freightways, Inc.</u>, 1976-NMCA-067, ¶ 8, 552 P.2d 1240, 1242); <u>Wiseman v. Arrow Freightways, Inc.</u>, 1976-NMCA-067, ¶ 8, 552 P.2d 1240, 1242 (concluding that a livestock transportation policy's time-to-sue provision is enforceable and not contrary to public policy). The Court concludes that the Supreme Court of New Mexico would follow <u>Sandoval v. Valdez</u>, 1978-NMCA-016, ¶ 39, 580 P.2d at 136, and <u>Wiseman v. Arrow Freightways, Inc.</u>, 1976-NMCA-067, ¶ 8, 552 P.2d and 1242, because those Court of Appeals of New Mexico cases' holdings are consistent with the Supreme Court of New Mexico's rulings in <u>Elec. Gin Co. v. Firemen's Fund Ins. Co.</u>, 1935-NMSC-001, ¶¶ 1-6, 39 P.2d at 1024-25 and <u>Whelan v. State Farm Mut. Auto. Ins. Co.</u>, 2014-NMSC-021, 329 P.3d 646 ("<u>Whelan</u>"). Moreover, the Supreme Court of New Mexico has cited those Court of Appeals of New Mexico cases' time-to-sue provision rulings without disapproving of them. <u>See</u>, <u>e.g.</u>, <u>Boradiansky v. State Farm Mut. Auto. Ins. Co.</u>, 2007-NMSC-015, ¶¶ 6-7, 156 P.3d 25, 26 (citing <u>Sandoval v. Valdez</u>, 1978-NMCA-016, ¶¶ 20-23, 580 P.2d at 136); <u>Sanchez</u>, 1981-NMSC-032, ¶ 8, 632 P.2d at 344 (citing <u>Wiseman v. Arrow Freightways, Inc.</u>, 1976-NMCA-067, ¶ 7, 552 P.2d at 1242).

New Mexico courts have determined that time-to-sue provisions in uninsured/underinsured motorist ("UM/UIM") contracts violate public policy if their time limit begins running when the accident happens instead of when the claim accrues. <u>See</u> <u>Whelan</u>, 2014-NMSC-021, ¶ 3, 329 P.3d at 648. <u>See</u> also <u>Sandoval v. Valdez</u>, 1978-NMCA-016, ¶ 17, 580 P.2d 131, 134 (determining that time-to-sue provisions "are void where they place a limitation upon or conflict with a statute granting uninsured motorist coverage").

It is an open question whether a commercial property damage insurance policy's time-to-sue provision violates public policy when it begins running when the damage happens. The New Mexico cases concluding that time-to-sue provisions are not contrary to public policy do not address whether the moment the claims begin to run makes a difference. The cases to which

Liberty Mutual cite also do not resolve the question. See State ex rel. Udall v. Colonial Penn Ins. Co., 1991-NMSC-048, ¶¶ 7-10, 812 P.2d at 780-81 (rejecting the State's argument that "preservation of the public fisc" was a public policy requiring the Supreme Court of New Mexico to void a bond contract's time-to-sue provision); Young v. Seven Bar Flying Serv., Inc., 1984-NMSC-069, ¶ 10, 685 P.2d at 956 (determining that "failure of an insurer to provide an individual with a copy of an applicable insurance policy will not, in every case, release the individual from the time-to-sue provisions in the policy"); City of Santa Fe v. Travelers Cas. & Sur. Co., the New Mexico Court of Appeals, 2009 WL 6764000, at *3 (determining that a bond agreement's time-to-sue provision applied to the city, even though the city did not directly issue the bond). The Court could not locate a case outside of New Mexico that voids a time-to-sue provision in an insurance contract like Value Inn's. Value Inn's proffered authority, Spicewood Summit Office Condominiums Ass'n, Inc. v. Am. First Lloyd's Ins. Co., 287 S.W.3d at 466, from Texas, is of little help. In that case, the court determined that a contractual provision with the "practical effect" of establishing a time-to-sue limitation of less than two years is void. 287 S.W.3d at 466. The provision is void not for public policy reasons, but rather because a Texas civil code says it is. See 287 S.W.3d 466 (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.070); Tex. Civ. Prac. & Rem. Code Ann. § 16.070 (stating that a "stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state").

Whelan is thus the best resource for determining whether the Supreme Court of New Mexico would expand its reasoning with regards to a UM/UIM contract to one relating to commercial property damage. After a closer look, the Court concludes that the Supreme Court of New Mexico's UM/UIM-related reasoning in Whelan would not apply to Value Inn's commercial property insurance Contract, and, therefore, the Supreme Court of New Mexico would not void the Contract's time-to-sue provision.

Whelan's time-to-sue provision analysis begins by identifying "the right that is being limited." 2014-NMSC-021, ¶ 10, 329 P.3d at 649. Whelan notes that the UM/UIM statute "seeks 'to protect individual members of the public against the hazard of culpable uninsured motorists'" by requiring auto insurers to provide coverage for uninsured and underinsured motorist coverage. 2014-NMSC-021, ¶ 10, 329 P.3d at 649 (quoting Romero v. Dairyland Ins. Co., 1990-NMSC-111, ¶ 6, 803 P.2d 242). Whelan then cites Brooks v. State Farm Ins. Co., in which the Court of Appeals of New Mexico "rejected an insurer's argument that an insured's UM/UIM cause of action against an insurer accrues on the date of the underlying accident [and] holding that the claim is based on an alleged breach of the insurance contract and therefore accrues after the insurer refuses to pay the claim." Whelan, 2014-NMSC-021, ¶ 11, 329 P.3d at 649 (citing Brooks v. State Farm Ins. Co., 2007-NMCA-033, ¶¶ 10–11, 154 P.3d at 697). Whelan notes:

> Brooks recognized that an insurer has the ability to protect itself from uncertainty caused by prejudicial delays in assertion of UM/UIM claims by including "appropriate time limitations" in its insurance contracts. But, significantly, it concluded that because "the date of accident is particularly extraneous to actions for specific performance of a contract to arbitrate involving UIM coverage," it would be "fundamentally unfair to time-bar an insured from compensation that was bargained for because an insured may not be aware until sometime after the accident.

Whelan, 2014-NMSC-021, ¶ 11, 329 P.3d 646, 649 (citing Brooks v. State Farm Ins. Co., 2007-NMCA-033, ¶¶ 10–11, 154 P.3d 697).

Whelan later notes that New Mexico courts, in deciding UM/UIM-related cases, have "sought how to 'best balance[ ] the interests in permitting private contractual relations between parties, and honoring the broad intent of the [UM/UIM] statute.'" Whelan v. State Farm Mut. Auto. Ins. Co., 2014-NMSC-021, ¶ 14, 329 P.3d 646, 650 (quoting Montaño v. Allstate Indemnity Co., 2004-NMSC-020, ¶ 18, 92 P.3d 1255). Whelan then notes that, "following that approach," the Court of Appeals of New Mexico, in Sandoval v. Valdez,

> held that a provision that barred suit one year after the date of the accident was not enforceable because it was shorter than the statutory limitations period for bringing a personal injury suit. Id. ¶¶ 23-24. The Court of Appeals reasoned that the purpose of the UM/UIM statute was to protect the insured from the uninsured, not the insurer from the insured, id. ¶ 16, stating that "[a]lthough many uninsured motorist statutes do not include a limitation period, the intent to protect the victim or the insured motorist from having to bear the total loss is obvious," id. ¶ 20.

Whelan v. State Farm Mut. Auto. Ins. Co., 2014-NMSC-021, ¶ 14, 329 P.3d 646, 650 (citing Sandoval v. Valdez, 1978-NMCA-016, 580 P.2d, 131). The Supreme Court of New Mexico does not expressly adopt the Court of Appeals of New Mexico's reasoning in Brooks v. State Farm Ins. Co. and Sandoval v. Valdez, but Whelan's ruling -- that time-to-sue provisions in UM/UIM contracts violate public policy if their time limits begin running at the date of the accident, see 2014-NMSC-021, ¶ 3, 329 P.3d at 648 -- incorporates the principles that those cases express.

Whelan features some concern about the general fairness of a time-to-sue provision that begins to run before a claim accrues, see 2014-NMSC-021, ¶¶ 15-16, 329 P.3d 646, 650-51 ("We can find no reasonable justification for a limitations period that may bar a claim before a lawful cause of action accrues."), but the Supreme Court of New Mexico does not cite to caselaw for that proposition, and the bulk of Whelan's reasoning relates to UM/UIM-specific concerns and cases; Whelan discusses the time-to-sue provision for ten paragraphs without citing a single case that concerns a non-UM/UIM insurance policy. Moreover, no court has applied Whelan to non-UM/UIM contracts; so far, courts discuss Whelan only in other UM/UIM-related cases. See Jaramillo v. Gov't Employees Ins. Co., 573 F. App'x 733, 745 (10th Cir. 2014)(Holmes, J.); Miller v. Cincinnati Ins. Co., No. CV 17-00271, 2018 WL 704719, at *5 (D.N.M. Feb. 2, 2018) (Yarbrough, M.J.); Gov't Employees Ins. Co. v. Shroyer, No. 115-CV-0306, 2015 WL 12669885, at *4 (D.N.M. Dec. 1, 2015)(Kelly, C.J.); Sinclair v. Zurich Am. Ins. Co., 141 F. Supp. 3d 1162, 1168 (D.N.M. 2015)(Lynch, M.J.); Ullman v. Safeway Ins. Co., 2017-NMCA-071, ¶ 10, 404 P.3d 434, 438.

The Court sees two significant differences between a UM/UIM-related automobile insurance policy and Value Inn's policy covering commercial property damage. First, a specific statutory regime -- the UM/UIM statute -- governs an automobile insurance policy, which demonstrates New Mexico's deliberate policy for protecting an insured from financial consequences from an accident with an uninsured or underinsured driver. Second, the UM/UIM statute's purpose is to protect individual drivers who may not be sophisticated insurance customers and may find themselves at the wrong end of a power disparity when purchasing an

Value Inn's chances to enforce its contractual rights if the Court dismisses the Complaint leads the Court to conclude that the Supreme Court of New Mexico would not dismiss those claims unless Liberty Mutual suffered substantial prejudice.

An affirmative defense succeeds on a rule 12(b)(6) motion if the complaint has a "built-in defense and is essentially self-defeating." 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 713 (3d. ed. 2004). Here, there is nothing in the Complaint or in the Contract indicating that Liberty Mutual suffered substantial prejudice as a result of Value Inn's failure to satisfy conditions precedent before filing this legal action. Therefore, Liberty Mutual's affirmative defense that Value Inn failed to satisfy conditions precedent before filing suit fails.[17]

_____

automobile insurance policy. Business owners who are in the market for insurance coverage for damage to commercial property are more likely to be on roughly equal footing with the insurer when negotiating a policy. In short, the reasons for voiding an unfavorable time-to-sue provision in a UM/UIM policy do not apply to a commercial property insurance contract like Value Inn's policy with Liberty Mutual. In light of the above, the Court concludes that the Supreme Court of New Mexico would enforce the Contract's time-to-sue provision. Moreover, because the Whelan reasoning depends on the statute governing the contract and not the claim's category, Whelan does not support UPA and UIPA claims prevailing over contractual time-to-sue defenses. See Ryan v. Liberty Mut. Fire Ins. Co., 234 F. Supp. 3d 612, 618-19 (D.N.J. 2017) (Walls, J)(applying a contract's one-year time bar to suit to a claim brought under New Jersey's consumer fraud statute, N.J. Ann. § 56:8-1 to -210, because "[a]ll of Plaintiffs NJCFA claims related directly to the insurance policy dispute over the denial of benefits"); Hays v. Mobil Oil Corp., 736 F. Supp. 387, 396 (D. Mass. 1990)(Wolf, J.)(enforcing a contractual time bar to suit, because "the provision is broad enough to reach all claims arising out of the business relationship between the parties, including an unfair business practices claim"), order aff'd in part, vacated in part, 930 F.2d 96 (1st Cir. 1991)("We conclude, as did the district court, that this language is sufficiently broad to encompass the present statutory claim."). But see Hornsby v. Phillips, 378 S.E.2d 870, 875 (Ga. Ct. App. 1989)("[W]e hold that contractual defenses are inapplicable when an action is based not on the contract but solely on an alleged violation of the Sale of Business Opportunities Act[, Ga. Code Ann. § 10-1-410 to -417].").

[17]Liberty Mutual argues that "preserving a timely limitations defense is not a legal reason to decline to dismiss this case for failure to state a claim." Reply at 11. Liberty Mutual states that

 [a]llowing a party to file suit in anticipation of a breach of contract that may not even occur is a dangerous precedent that would promote the filing of any

The Court emphasizes the narrowness of its holding. Insureds should not use the Court's holding to justify refusing to submit to an EUO or provide requested documents to the insurance company, and then file suit one week, one month, or even one year after the incident. In those cases, the Court and state courts are likely to dismiss the case and require a second suit. It is only when, for whatever reason, a second suit would mean no benefit of the insurance contract that the Supreme Court of New Mexico would, the Court concludes, require a showing of substantial prejudice to the insurance company to get around the condition precedent. Experienced attorneys should also not delay filing a lawsuit until the last minute to avoid having to submit to an EUO or provide requested documents. Even when substantial prejudice must be shown, a material breach creates a presumption of prejudice, see Roberts Oil, 1992-NMSC-032, ¶ 43, 833 P.2d at 232 ("The courts seem fairly uniform in agreeing that when an insured breaches one of these policy provisions, a presumption of prejudice to the insurer arises.), and the insuror bears the ultimate burden to support that presumption, see Fennema, 2005-NMSC-010, ¶ 13, 110 P.3d at 495 ("Since it is the insurer who is seeking to be excused from this aleatory promise, the insurer should, in the words of Rule 301, bear the 'risk of nonpersuasion' that the insured's conduct prejudiced the insurer."); Roberts Oil, 1992-NMSC-032, ¶ 46, 833 P.2d at 234 ("The presumption may be met or rebutted by the insured by presenting evidence that the insurer was

premature lawsuit, regardless of whether or not a cause of action has accrued. Filing premature lawsuits would weigh against the interest of judicial economy and is unfair and, therefore, prejudicial to a defendant.

Reply at 10. Liberty Mutual's argument is sound, but many of Value Inn's claims' merits do not depend on the appraisal's outcome. For instance, its allegations that Liberty Mutual (i) breached its contract and committed insurance bad faith by not agreeing to the appraisal promptly; and (ii) violated the UIPA and UPA, and committed negligent misrepresentation by misleading him about its policy and not settling its claim in good faith, are true regardless what the appraisal concludes.

not substantially prejudiced.").  Thus Liberty Mutual may be able, sometime down the road, to show it suffered substantial prejudice.  For now, the Court determines that, under <u>Iqbal</u> and <u>Twombly</u>, Value Inn has stated a plausible claim for relief.

**II.  VALUE INN STATES A CLAIM FOR BREACH OF CONTRACT, INSURANCE BAD FAITH, AND UIPA VIOLATIONS, BUT NOT FOR UPA VIOLATIONS OR <u>NEGLIGENT MISREPRESENTATION</u>.**

Value Inn states a claim for breach of contract, insurance bad faith, and some UIPA violations.  Value Inn does not properly allege a cause of action for UPA violations or negligent misrepresentation.  The Court also dismisses Value Inn's injunctive and declaratory relief requests as moot, because, according to the parties' briefings, Value Inn has achieved the requested relief.

**A.  VALUE INN STATES A CLAIM FOR BREACH OF CONTRACT.**

In its Complaint, Value Inn first alleges that Liberty Mutual breached its Contract.  <u>See</u> Complaint ¶¶ 15-18, at 6-7.  Value Inn alleges that Liberty Mutual breached its contractual obligations by performing one or more of fifteen actions that appear to have been lifted verbatim from UIPA's list of unfair insurance practices.  <u>Compare</u> Complaint ¶ 17, at 6-7, <u>with</u> N.M. Stat. Ann. § 59A-16-20(A)-(O).  Value Inn adds no facts to this list of actions, <u>see</u> <u>Complaint</u> ¶ 17, at 6 ("Liberty Mutual breached its contractual obligation to Plaintiff by . . . attempting to settle claims on the basis of an application that was altered without notice, or knowledge or consent of, the insured . . . ."), and so these generic allegations do not, on their own, establish plausible facts for the Court to accept as true for its motion to dismiss analysis, <u>see</u> <u>Iqbal</u>, 556 U.S. at 678 (stating that a complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient); <u>id.</u> ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Value Inn, however, alleges facts elsewhere in the Complaint supporting a breach-of-contract claim. It asserts, for instance, that its Contract contains a clause stating that, if they disagree on the amount of loss, either party may request an appraisal. <u>See</u> Complaint ¶ 11, at 4. The appraisal clause states:

> If we and you disagree on the value of the property or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Contract ¶ E(2), at 8. Value Inn avers that it "demanded appraisal per the policy" and named an appraiser, but the "Defendants have refused to comply with the appraisal process," so no umpire has been selected. Complaint ¶ 13, at 5. According to Value Inn, the appraisal clause holds that, once Value Inn requests an appraisal, both Value Inn and Liberty Mutual must select "a competent and impartial appraiser." Contract at 8. Value Inn asserts that Liberty Mutual has not selected an appraiser, as the Contract requires. Assuming these facts as true, Value Inn states a claim to relief that is plausible on its face. Value Inn also asserts that it suffered contract-related damages. <u>See</u> Complaint ¶ 32, at 11. Consequently, Value Inn asserts facts that raise a right to relief above a speculative level.[18] <u>See</u> <u>Twombly</u>, 550 U.S. at 555.

## B. VALUE INN STATES A CLAIM FOR INSURANCE BAD FAITH.

The Court's analysis whether Value Inn states a claim for insurance bad faith unfolds roughly as does its analysis for Value Inn's breach-of-contract claim. Although Value Inn

---

[18]Liberty Mutual argues that Value Inn's breach-of-contract claim is premature, because the appraisal has not yet been performed. <u>See</u> Reply at 5. Value Inn alleges, however, breach-of-contract damages arising from the time that Liberty Mutual allegedly refused to proceed with the appraisal. <u>See</u> Complaint ¶ 32, at 11 ("Plaintiff incurred . . . costs of delay in performance, costs of mitigation, [and] costs of substitute performance . . ."). Therefore, Value Inn alleges harm not dependent on the appraisal's outcome.

asserts that Liberty Mutual and Robinson acted in bad faith by listing, once again, UIPA's list of unfair insurance practices verbatim, <u>compare</u> Complaint ¶ 20, at 7-8, <u>with</u> N.M. Stat. Ann. § 59A-16-20(A)-(O), Value Inn, elsewhere in the Complaint, asserts facts establishing a plausible claim for insurance bad faith. New Mexico's insurance bad-faith cause of action derives from "an implied covenant of fair dealing which creates an obligation between the parties to act in good faith." <u>Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.</u>, 1984-NMSC-107, ¶ 11, 690 P.2d 1022, 1024 (citing 17 Am.Jur.2d Contracts § 256 (1964)). In its Complaint, Value Inn alleges that Robinson "ignored clearly covered damage," and "improperly requested an[] EUO and authorized his counsel to request documents solely for the purpose of harassing the insured in an attempt [t]o have him accept inadequate payments made on the claim." Complaint ¶ 8, at 3. it alleges that Liberty Mutual has requested irrelevant documents "made for the sole purpose of harassing Plaintiff, prolonging the claims process and attempting to dissuade him from continuing with his claim." Complaint ¶ 10, at 4. These alleged facts establish a claim for insurance bad faith.

Liberty Mutual argues that Value Inn's insurance bad-faith claim is premature, because Value Inn "refuses to allow Liberty Mutual to conduct its investigation" by not submitting to an EUO or providing requested documents. MTD at 14. Liberty Mutual contends that "[c]ourts that have addressed the issue of whether a bad faith claim can be maintained when the insured refuses to submit to an EUO have dismissed the bad faith claim." MTD at 14 (citing <u>West v. State Farm Fire & Cas. Co.</u>, 868 F.2d 348, 351 (9th Cir. 1989); <u>Brizuela v. Calfarm Ins. Co.</u>, 116 Cal. App. 4th 578, 595 (2004); <u>Globe Indem. Co. v. Superior Court</u>, 6 Cal. App. 4th 725, 731 (1992)). This argument is unavailing. The cases to which Liberty Mutual cites respond to motions for summary judgment. At the motion-to-dismiss stage, the Court must view Value

Inn's factual allegations in the light most favorable to it and draw all reasonable inferences in its favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. In its Complaint, Value Inn alleges that its policy covers its claimed damages, and that Liberty Mutual and Robinson improperly requested Value Inn to submit to an EUO and provide unnecessary documents to harass him. See Complaint ¶ 8-10, at 3-4. Accepting these facts and drawing all reasonable inferences in its favor, Value Inn's refusal to submit to the EUO or provide the requested documents does not negate these allegations.

### C. VALUE INN STATES A CLAIM FOR A UIPA VIOLATION.

Value Inn alleges that Liberty Mutual and Robinson violated the UIPA § 59A-16-4 specifically, by

> knowingly misrepresenting to Plaintiff[] the benefits, advantages, conditions or terms of the Policy; knowingly using any name or title of any policy or class of policies misrepresenting the true nature of the Policy to Plaintiffs and by knowingly failing to disclose material facts to the Plaintiffs reasonably necessary to prevent other statements made from being misleading.

Complaint ¶ 23, at 9. These allegations mirror § 59A-16-4(A), (E), and (G). Value Inn also alleges that Liberty Mutual and Robinson violated § 59A-16-20

> by knowingly committing the following acts: (i) misrepresenting to Plaintiff's pertinent facts or policy provisions relating to coverages at issue; (ii) failing to adopt and implement reasonable standards for the prompt investigation and processing of Plaintiffs' claims arising under the Liberty Mutual insurance policy; and, (iii) not attempting in good faith to effectuate prompt, fair and equitable settlements of Plaintiffs' claims in which liability has become reasonably clear.

Complaint ¶ 24, at 9. These allegations mirror § 59A-16-20(A), (C), and (E).

These generic accusations mirroring the statutes' language do not, on their own, state a claim upon which relief can be granted. See Iqbal, 556 U.S. at 678 ("[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient."). The majority of Value Inn's UIPA allegations relate to making misleading

statements or withholding important information relating to Value Inn's policy. Value Inn does not, however, allege that anyone misrepresented the policy. Rather, Value Inn alleges that Liberty Mutual and/or Robinson reached unreasonable conclusions about the merits of Value Inn's claim, see Complaint ¶¶ 8-10, at 3, and processed its claim in bad faith, see Complaint ¶¶ 10-13, at 3-5. The only UIPA allegations for which Value Inn provides corresponding factual assertions are for "failing to adopt and implement reasonable standards for the prompt investigation and processing of Plaintiffs' claims arising under the Liberty Mutual insurance policy; and . . . [for] not attempting in good faith to effectuate prompt, fair and equitable settlements of Plaintiffs' claims in which liability has become reasonably clear." Complaint ¶ 24, at 9. Value Inn alleges that Liberty Mutual and Robinson unreasonably undervalued the damages, see Complaint ¶ 8, at 3, and insisted on a EUO to "prolong[] the claim process and attempt[] to dissuade him from continuing with his claim," Complaint ¶ 10, at 3-4.

Consequently, Value Inn states a claim for a UIPA violation pursuant to § 59A-16-20(C) ("failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies"). Value Inn also states a claim for a UIPA violation pursuant to § 59A-16-20(E) ("not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear"). The Court dismisses all other UIPA allegations and theories.

### D.    VALUE INN DOES NOT STATE A CLAIM FOR A UPA VIOLATION.

Value Inn alleges that Liberty Mutual and Robinson's conduct violated the UPA by

[k]nowingly making false, misleading oral and written statements, visual descriptions and other representations in connection with the sale of Liberty Mutual's goods and services, namely insurance policies, which may, tends to and did deceive and mislead any person, including Plaintiff, and includes:

1. causing confusion or misunderstanding as to the source, sponsorship, approval, and certification of Liberty Mutual'[s] goods and services;

2. representing that Liberty Mutual's goods and services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have;

3. using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact when doing so deceives or tends to deceive;

4. stating that a transaction involves rights, remedies or obligations that it does not involve; and

5. failing to deliver the quality or quantity of goods or services contracted for by the parties.

Complaint ¶ 26, at 9-10. Value Inn adds that Liberty Mutual and Robinson "took advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree that resulted in a gross disparity between the value received by Plaintiff and the price paid by Liberty Mutual's goods and services." Complaint ¶ 27, at 10. Value Inn's UPA allegations closely track language from UPA's unfair practices definitions without adding additional facts. Compare Complaint ¶¶ 27-28, at 9-10, with N.M. Stat. Ann. § 57-12-2(D)(2), (3), (14), (15), (17); (E)(1), (2). Like its UIPA allegations, Value Inn's UPA lacks facts asserted elsewhere in the Complaint. See Ashcroft v. Iqbal, 556 U.S. at 678 (stating that a complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient). Value Inn's Complaint alleges that Liberty Mutual and Robinson unreasonably undervalued the damages, see Complaint ¶ 8, at 3, and insisted on a EUO to "prolong[] the claim process and attempt[] to dissuade him from continuing with is claim," Complaint ¶ 10, at 3-4. Nowhere does Value Inn allege specific facts relating to Liberty Mutual or Robinson making unfair or misleading statements in selling him its insurance policy. See Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶ 13, 811 P.2d at 1311 (stating that a UPA claim element is that the false or misleading representation was knowingly made in

connection with a sale, lease, rental, or loan of goods or services); N.M. Stat. Ann. § 57-12-2(D) (defining an unfair or deceptive practice as a false or misleading representation "knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce"). Consequently, the Court will dismiss Value Inn's UPA claims for failing to state a claim upon which the Court can grant relief.

### E. VALUE INN DOES NOT STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION.

Value Inn alleges that Liberty Mutual and Robinson

> made false representations of fact or representations of fact that, while literally true, were misleading, Liberty Mutual and Robinson did not exercise ordinary care in obtaining or communicating the information conveyed, Liberty Mutual and Robinson should reasonably have foreseen Plaintiff would be harmed if the information conveyed was incorrect or misleading, and that Plaintiff justifiably relied on the information to each of his detriment.

Complaint ¶ 29, at 10-11.

A negligent misrepresentation claim in New Mexico requires showing: "(1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff." Robey v. Parnell, 2017-NMCA-038, ¶ 31, 392 P.3d 642, 652 (citing Saylor v. Valles, 2003-NMCA-037, ¶ 17, 63 P.3d 1152). See UJI 13-1632 (stating that "[a] material misrepresentation is an untrue statement which a party intends the other party to rely on and upon which the other party did in fact rely," and "where the speaker has no reasonable ground for believing that the statement made was true"). Value Inn comes close to reciting the negligent misrepresentation elements, omitting an allegation that Liberty Mutual and/or Robinson intended to induce Value Inn to rely on the misrepresentations. In any case, the count's deeper problem is that Value Inn does not allege facts anywhere in the Complaint

indicating what those false or misleading representations are, who said them, how Value Inn relied on them, or why it was justified in doing so. Consequently, the Court would dismiss Value Inn's negligent misrepresentation claim for failure to state a claim.

### F. THE COURT DISMISSES VALUE INN'S DECLARATORY AND INJUNCTIVE RELIEF REQUEST AS MOOT.

In its Complaint, Value Inn asks that the Court "order that an EUO is not appropriate in this matter and that this claim proceed through the appraisal process in the policy." Complaint ¶ 38(a), at 12. The Court determines that this claim is moot, because, since filing its Complaint, Value Inn submitted to an EUO, see Response ¶ 7, at 4 ("Defendants' assertion that Plaintiff has refused to submit to an EUO is untrue as it is set for September 1, 2017"); Reply at 2 ("Plaintiff finally submitted to an EUO on September 1, 2017"); and Liberty Mutual agreed to proceed with the appraisal, see Reply at 3 ("During the EUO, Plaintiff again demanded appraisal, and Liberty Mutual thereafter informed Plaintiff that liberty Mutual agrees to proceed with appraisal.").[19]

---

[19]To the extent that the Court dismisses Value Inn's declaratory and injunctive relief requests as moot based on what the post-Complaint pleadings raise, the Court may do so, because the mootness inquiry implicates the Court's subject-matter jurisdiction under rule 12(b)(1). See Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013)("Under Article III of the U.S. Constitution, '[w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.'" (quoting Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 140 (2d Cir.1994))). Consequently, the Court is not restricted to the complaint, as it is on rule 12(b)(6) challenges for failure to state a claim. When "resolution of the jurisdiction question is intertwined with the merits of the case," however, a court may have to convert the rule 12(b)(1) motion into a summary judgment motion under rule 56 of the Federal Rules of Civil Procedure. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). See 5B C. Wright, Miller, Federal Practice & Procedures § 1350, at 245-49 (4th ed.)("If . . . a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial."). The Court can convert part of a motion to dismiss into a motion for summary judgment. See, e.g., Advanced Optics Elecs., Inc. v. Robins, 633 F. Supp. 2d 1237, 1256-57 (D.N.M. 2008)(Browning, J.)(treating a motion to dismiss as a motion for summary judgment with regard to one issue but not others). Liberty Mutual's subject-matter jurisdiction argument -- that Value Inn's declaratory and injunctive relief requests are moot -- go to the case's merits, because whether Value Inn has submitted to an EUO and Liberty Mutual has agreed to an appraisal determines both whether the Court should grant Value Inn's requests and

## III.    THE COURT WILL NOT ABATE THIS ACTION.

In its Response, Value Inn asks the Court to abate this case so that the parties can complete the EUO and appraisal processes.  See Response ¶¶ 11-12, at 5 (citing Vanguard Underwriters Ins. Co. v. Smith, 999 S.W.2d at 451).  Value Inn asserts that "the proper sequence of events is to complete the EUO and appraisal processes and determine Liberty's claims position . . . [which will] likely dispense with many issues in this case and avoid unnecessary time and expense.  At that time, the abatement should be lifted and any necessary remaining litigation can go forward."  Response ¶ 12, at 5.

Courts have abated legal actions in similar circumstances to permit appraisal to proceed.  See, e.g., Hallak v. Allstate Vehicle & Prop. Ins. Co., No. 4:17-CV-00237-O-BP, 2017 WL 4182198, at *3 (N.D. Tex. Aug. 29, 2017)(Ray Jr., J.); Johnson v. Liberty Mut. Fire Ins. Co., No. 4:14-CV-604, 2015 WL 11170153, at *2 (E.D. Tex. Oct. 30, 2015)(Mazzant, J.); Gutierrez v. Geovera Specialty Ins. Co., No. CV H-12-3696, 2013 WL 12139381, at *2 (S.D. Tex. Feb. 20, 2013)(Stacy, J.); James v. Prop. & Cas. Ins. Co. of Hartford, No. CIV.A. H-10-1998, 2011 WL

---

whether those requests are still Article III controversies.  When converting a motion to dismiss to a motion for summary judgment, courts must be "given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997).  For a motion for summary judgment, the Court may also consider arguments raised in a reply so long as it affords the opposing party a sufficient interval to "request time to file a surreply."  Pippin v. Burlington Resources Oil and Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006).  The Court can consider Liberty Mutual's assertion in its reply that it agreed to proceed with the appraisal, see Reply at 3, because Liberty Mutual filed its reply over six months ago and Value Inn has not requested time to file a surreply.  Consequently, the Court may consider Liberty Mutual's assertion that it has begun complying with the appraisal process to be an undisputed fact.  See Walton v. New Mexico State Land Office, 49 F. Supp. 3d 920, 931 n.16 (D.N.M. 2014)(Browning, J.) (determining that a defendant's factual assertion in a reply is undisputed, because the plaintiff did not request time to file a surreply to dispute it), supplemented, 113 F. Supp. 3d 1178 (D.N.M. 2015)(Browning, J.), aff'd sub nom. Walton v. Powell, 821 F.3d 1204 (10th Cir. 2016).  If Value Inn feels that it did not get a reasonable opportunity to provide evidence on this matter, it may still do so, but, for now, the Court considers Value Inn's declaratory and injunctive relief to be moot.

4067880, at *3 (S.D. Tex. Sept. 12, 2011)(Werlein, Jr., J.); <u>Vanguard Underwriters Ins. Co. v. Smith</u>, 999 S.W.2d at 451. In those cases, however, courts granted the insurance companies' requests for abatement to effect the insurance company's contractual right to appraisal before litigation. Here, the insured files a legal action and then requests abatement; the insurance company is not requesting abatement. <u>See</u> Response at 5. It is requesting dismissal, to which it is entitled. Value Inn may have a contractual right to an appraisal once it asks for one, <u>see</u> Contract ¶ E(3)(b), but it does not have a contractual right to an appraisal before legal action proceeds any further, and the Court does not, at this time, see a need to abate, <u>see</u> <u>Gomez v. Nationwide Prop. & Cas. Ins. Co.</u>, No. 5:15-CV-67, 2016 WL 6816217, at *2 (S.D. Tex. Jan. 28, 2016)(Quiroga, M.J.)(denying the plaintiff's request to abate legal action while appraisal proceeds, and stating that the "[p]laintiff is entitled to appraisal, but not necessarily to abatement").

## IV. THE COURT WILL NOT AWARD ATTORNEYS FEES FOR VALUE INN'S DISMISSED UIPA AND UPA CLAIMS.

Liberty Mutual asks the Court to award it attorneys' fees for defending against Value Inn's UIPA and UPA claims. According to Liberty Mutual, Value Inn knew those claims were groundless but brought them anyway. <u>See</u> MTD at 23; Reply at 12. The Court will not award attorneys' fees for Value Inn's UIPA or UPA claims, because there is no sound basis for the Court to conclude that Value Inn brought those claims knowing them to be groundless or to conclude that the claims are in fact groundless.

The UIPA states that a court may award attorneys' fees to the prevailing party if "the party complaining of the violation of that article has brought an action that he knew to be groundless." N.M. Stat. Ann. § 59A-16-30(A). To the extent that Liberty Mutual requests attorneys' fees incurred in defending against the UIPA claims that the Court dismisses, <u>see</u> <u>supra</u>

§ II.C, at 61-62, the Court will not award those attorneys' fees, because there is no sound basis for the Court to determine that Value Inn alleges UIPA claims that it knows are baseless. In its Complaint, Value Inn does not allege facts supporting its UIPA-based allegations that Liberty Mutual and/or Robinson made misleading statements or withheld important information regarding Value Inn's policy. See supra § II.C, at 61-62. The lack of facts is a reason to conclude that Value Inn fails to state a claim; it is not, however, a sound reason upon which to conclude that Value Inn brought those claims knowing they were baseless.

The UPA states that courts "shall award attorney fees and costs to the party charged with an unfair or deceptive trade practice or an unconscionable trade practice if it finds that the party complaining of such trade practice brought an action that was groundless." N.M. Stat. Ann. § 57-12-10(C). The Court determines that Value Inn does not state a claim for relief for its UPA-based claims, because the UPA applies to unfair trade practices relating to a sale or transaction, and Value Inn does not allege any facts relating to Liberty Mutual's actions in selling him its insurance policy. See supra § II.D at 62-64. Although the Court sees fit to dismiss those UPA allegations for failing to state a claim, the Court sees no sound reason to conclude, however, that these UPA claims were baseless.

**IT IS ORDERED** that Defendants Ohio Security Insurance Company and Liberty Mutual Insurance Company's Motion to Dismiss and for Declaratory Judgment and Supporting Authority, filed August 22, 2017 (Doc. 6), is granted in part and dismissed in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Milad K. Farah
Guerra & Farah, PLLC
El Paso, Texas

     *Attorneys for the Plaintiff*

Shannon A. Parden
Ray, McChristian & Jeans, P.C.
Albuquerque, New Mexico

     *Attorneys for the Defendants*